IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, AND THE STATE OF INDIANA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:22-cv-00303 Honorable Sunil R. Harjani |
| v. | ) ) | |
| HERITAGE-CRYSTAL CLEAN, LLC, | ) ) | |
| Defendant. | ) ) ) | |

**CONSENT DECREE**

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ...................................................................5
II.    APPLICABILITY ....................................................................................6
III.   CALCULATION OF TIME .......................................................................7
IV.    DEFINITIONS ........................................................................................7
V.     CIVIL PENALTY ...................................................................................11
VI.    COMPLIANCE REQUIREMENTS ............................................................13
       A.    Prohibition on Unpermitted Treatment, Storage or Disposal of Hazardous
             Waste ..........................................................................................13
       B.    Pre-Acceptance Screening, Transport, and Management of Used 142
             Solvent .......................................................................................14
             i.     Pre-Acceptance Screening of New 142 Solvent Services.........................14
             ii.    Acceptance and Transport of Used 142 Solvent............................17
             iii.   Tracking Used 142 Solvent Accepted by HCC ........................19
             iv.    Sampling and Analysis Plan ................................................21
             v.     Waste Screening Program–Used 142 Solvent Drums ..............................22
             vi.    Waste Screening Program–Consolidation Containers ............................30
       C.    Management of Used 106 Solvent ...............................................36
             i.     Acceptance and Transport of Used 106 Solvent.........................38
             ii.    Tracking Used 106 Solvent Accepted by HCC .........................39
             iii.   Screening of Used 106 Solvent Not Identified as Hazardous Waste........41
       D.    Interim Compliance Measures at HCC's 10th Street Facility .................44
       E.    Review by Plaintiffs of Deliverables ...........................................44
       F.    Permits .......................................................................................46
VII.   THIRD-PARTY AUDIT ..........................................................................46
VIII.  REPORTING REQUIREMENTS ................................................................46
IX.    STIPULATED PENALTIES .....................................................................52
X.     FORCE MAJEURE ................................................................................64
XI.    DISPUTE RESOLUTION .........................................................................66
XII.   INFORMATION COLLECTION AND RETENTION ....................................69
XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS..........................71
XIV.   COSTS ...............................................................................................73
XV.    NOTICES............................................................................................73
XVI.   EFFECTIVE DATE ................................................................................76
XVII.  RETENTION OF JURISDICTION ............................................................76
XVIII. MODIFICATION ...................................................................................76
XIX.   TERMINATION ....................................................................................77
XX.    PUBLIC PARTICIPATION .....................................................................78
XXI.   SIGNATORIES/SERVICE.......................................................................79
XXII.  INTEGRATION ....................................................................................80
XXIII. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION ...........................80
XXIV.  HEADINGS ..........................................................................................80
XXV.   FINAL JUDGMENT ...............................................................................81
XXVI.  APPENDICES ......................................................................................81

WHEREAS, Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), the Louisiana Department of Environmental Quality ("LDEQ"), and the State of Indiana, on behalf of the Commissioner of the Indiana Department of Environmental Management ("IDEM"), filed a Complaint on January 19, 2022 against Heritage-Crystal Clean, LLC ("HCC") pursuant to Sections 3008(a) and (g) of the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. § 6928(a) and (g), La. R.S. 30:2025, and Indiana Code Section 13-30-4-1.

WHEREAS, the Complaint alleged HCC violated the statutory and regulatory requirements applicable to the management of solid and hazardous waste at HCC Facilities located in Shreveport, Louisiana ("Shreveport Hub"); Indianapolis, Indiana ("10th Street Facility"); Denver, Colorado ("Denver Branch"); Atlanta, Georgia ("Atlanta Hub"); and Fairless Hills, Pennsylvania ("Fairless Hills Facility").

WHEREAS, HCC, headquartered in Hoffman Estates, Illinois, is an environmental services company. HCC provides parts cleaning solvent services, containerized waste management services, and used oil collection services to a broad range of customers across the country. In connection with these services, HCC owns or operates, or has owned or operated, facilities of various sizes across the country, including the Shreveport Hub, 10th Street Facility, Denver Branch, Atlanta Hub, and Fairless Hills Facility.

WHEREAS, as part of its parts cleaning solvent services, HCC distributes solvent products to customers, collects used solvents from those customers, and then manages the used solvents prior to resale or redistribution. The solvent products that HCC distributes to customers include products known as "142 solvent" and "106 solvent." In referring to products as 142 solvent or 106 solvent, the numbers "142" and "106" refer to the product specification

Consent Decree        Page 1 of 91

*U.S., LDEQ, & IN v. Heritage Crystal Clean, LLC*, Civil Action No. 1:22-cv-00303 (N.D. Il.)

flashpoints of the respective solvents, but HCC does not test the flashpoint of each container of solvent.

WHEREAS, the Complaint alleged that samples of Used 142 Solvent exhibited hazardous waste characteristics, including toxicity and ignitability.

WHEREAS, the Complaint alleged that HCC regularly re-sold the commercially valuable fraction of the Used 106 Solvent for use in various applications, including in roofing material applications. The Complaint also alleged that on a regular basis, the Used 106 Solvent received was not suitable for use in various resale applications unless HCC altered the composition of the Used 106 Solvent by, among other things, using gravity separation to remove water and solids until the Used 106 Solvent met applicable product specifications. The Complaint further alleged that because HCC's practices resulted in recovery of a useable product from the Used 106 Solvent, HCC was engaging in reclamation of the Used 106 Solvent. Finally, the Complaint alleged that samples of Used 106 Solvent exhibited hazardous waste characteristics, including toxicity and ignitability. HCC denies each of these allegations and contends that the removal of water was incidental processing under EPA's guidance and not reclamation.

WHEREAS, the Complaint alleged HCC's management of Used 106 Solvent and Used 142 Solvent violated hazardous waste management requirements, including failure to make required hazardous waste determinations; storage of hazardous waste without a permit; transport of hazardous waste without a manifest; failure to comply with requirements related to reducing air emissions from hazardous waste tanks and equipment; and failure to comply with secondary containment requirements for hazardous waste tanks. HCC denies each of these allegations and contends that it was at all times engaged in exempt recycling activities and operated in accordance with RCRA.

WHEREAS, the Complaint alleged that as part of its used oil collection services, HCC collected used oil from customers and transported it to locations for re-refining. The Complaint also alleged that, as part of these operations, HCC stores used oil at various locations including the Shreveport Hub.

WHEREAS, the Complaint alleged that HCC violated the statutory and regulatory requirements relating to management of used oil at its Shreveport Hub, including that used oil was stored in tanks that were not labelled or marked clearly with the words "Used Oil" and that the associated secondary containment system was not sufficiently impervious to prevent any used oil released into the containment system from migrating to soil or groundwater. Upon learning that a tank was not marked with the words "Used Oil," HCC immediately installed a sign. HCC denies that secondary containment was inadequate.

WHEREAS, in the Complaint, the State of Indiana also alleged that HCC violated the terms and conditions of its solid waste processing facility permit at the 10th Street Facility and the applicable state regulations that prohibit solid waste processing facilities from accepting hazardous waste.

WHEREAS, shortly after the Complaint was filed, the Parties agreed to engage in settlement discussions focused on resolving the violations alleged in the complaint. In order to facilitate settlement discussions, the Court extended deadlines including the deadline for HCC to file its Answer.

WHEREAS, HCC represented to Plaintiffs that it implemented various measures starting in early 2022 designed to improve compliance with RCRA in its handling of Used 106 Solvent and Used 142 Solvent including:

• Efforts to reduce the amount of water that Customers introduce into Used 106 Solvent. Specifically, HCC implemented a project that entailed the following activities: testing

water levels of Used 106 Solvent from Customers suspected of adding water; testing water content of all incoming Used 106 Solvent Drums at the Shreveport Hub and Pennsauken Hub; instituting standard operating procedures at HCC Facilities to ensure aqueous parts cleaners and other sources of water are separated from all Used 106 Solvent operations; investigating the level of water contained and removed from storage tanks containing Used 106 Solvent at a facility in Hammond, Indiana where HCC leases one or more tanks from Wolf Lake Terminals, Inc.; and re-piping the tank systems at the Shreveport Hub to eliminate the process of water separation of Used 106 Solvent.

• Efforts to reduce contaminants that Customers introduce into Used 142 Solvent. Specifically, HCC implemented a project that entailed the following activities: developing educational materials for its Customers to better understand how hazardous constituents could get introduced into their Used 142 Solvent, resulting in such solvent being regulated as a hazardous waste; revising its 142 solvent generator certification form; and expanding the analytical parameters it tests for when Initiating Parts Washing Service with a 142 Solvent Customer.

WHEREAS, after extensive settlement discussions to resolve the claims in the Complaint proved unsuccessful, the Parties retained a mediator. During mediation, the Parties reached a tentative agreement on key items, specifically civil penalty and injunctive relief measures.

WHEREAS, HCC has represented that all tanks storing used oil at the Shreveport Hub are now labelled or marked clearly with the words "Used Oil" and that the associated secondary containment system has been repaired so that it is sufficiently impervious to prevent any used oil released into the containment system from migrating to soil or groundwater. Based on these representations, Plaintiffs are not seeking any additional compliance measures related to the storage of used oil at the Shreveport Facility.

WHEREAS, in the Eleventh Claim for Relief in the Complaint, Plaintiff the State of Indiana alleged violations at the 10th Street Facility related to the unauthorized acceptance of hazardous waste by a permitted solid waste facility. The Complaint alleges that the Used 142 Solvent and the Used 106 Solvent managed at the 10th Street Facility were hazardous wastes, which HCC was not permitted to accept. Indiana is not seeking any additional compliance measures beyond what is described in this Consent Decree to resolve the state-specific Claim.

WHEREAS, except with respect to matters addressed in Section I (Jurisdiction and Venue), HCC does not admit the allegations in the Complaint or any liability to the United States or the State Co-Plaintiffs arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and RCRA Sections 3008(a) and (g), 42 U.S.C. §§ 6928(a) and (g), and over the Parties. This Court has supplemental jurisdiction over the state law claims alleged in the Complaint pursuant to 28 U.S.C. § 1367(a) because the state claims are so related to the federal claims as to form part of the same case or controversy. Venue lies in this judicial district pursuant to RCRA Section 3008(a)(1), 42 U.S.C. § 6928(a)(1), and 28 U.S.C. §§ 1391(b) and 1395(a), because HCC resides and is found within this district. For purposes of this Consent Decree, or any action to enforce this Consent Decree, HCC consents to the Court's jurisdiction over this Consent Decree and any such action and over HCC and consents to venue in this judicial district.

2.      For purposes of this Consent Decree only, HCC agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 3008(a) and (g) of the RCRA, as amended, 42 U.S.C. § 6928(a) and (g), La. R.S. 30:2025, Indiana Code Section 13-30-4-1,

Title 33 of the Louisiana Administrative Code ("LAC") Part V, Chapters 1 through 51; Title 329, Article 3.1 of the Indiana Administrative Code ("IAC"), which incorporates specified provisions of 40 C.F.R. Parts 260–270 (2008) by reference; Title 6 of the Code of Colorado Regulations ("CCR"), Section 1007-3, Parts 100, 260–279 (2012); Ga. Comp. R. and Regs. 391-3-11 (2016), which incorporates specified provisions of 40 C.F.R. Parts 260–279 (2016) by reference; Title 25 of the Pennsylvania Code ("Pa. Code"), which incorporates specified provisions of 40 C.F.R. Parts 260–270 (2005) by reference; Section 3005 of RCRA, 42 U.S.C. § 6925; La. R.S. 30:2183; and Indiana Code Section 13-30-2-1(10).

## II.   APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, LDEQ, and Indiana, and upon HCC and any successors, assigns, or other entities or persons otherwise bound by law.

4.     Transfer and Re-Location of Operations.

a.     No transfer of ownership or operation of any HCC Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve HCC of its obligation to ensure that the terms of the Decree are implemented.

b.     In compliance with the requirements of this Paragraph, HCC may establish HCC Waste Screening Facilities at alternate or additional locations, provided that HCC shall maintain at least four HCC Waste Screening Facilities at all times. In order to establish HCC Waste Screening Facilities at alternate or additional locations, HCC shall at least 30 days prior to establishing an HCC Waste Screening Facility at an alternate or additional location provide written notice of the prospective location(s) to the United States and any Applicable State Co-Plaintiff, in accordance with Section XV (Notices). Any attempt to establish HCC Waste Screening Facilities at alternate or

additional locations without complying with this Paragraph constitutes a violation of this Decree and such alternate or additional location will not be an HCC Waste Screening Facility for purposes of this Consent Decree.

5.      HCC shall provide a copy of this Consent Decree or a summary of relevant provisions to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. HCC shall be responsible for ensuring that all employees, contractors, and subcontractors involved in performing any work required under this Consent Decree perform such work in compliance with the requirements of this Consent Decree.

6.      In any action to enforce this Consent Decree, HCC shall not raise as a defense the failure by any of its officers, directors, employees, agents, contractors, or subcontractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.    CALCULATION OF TIME

7.      Any time period specified in this Consent Decree shall be computed as provided in Fed. R. Civ. P. 6.

## IV.    DEFINITIONS

8.      Terms used in this Consent Decree that are defined in RCRA or Relevant Hazardous Waste Management Programs shall have the meanings assigned to them in RCRA or such programs. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Atlanta Hub" means the HCC Waste Screening Facility located at 6140 Purdue Drive, Atlanta, Georgia.

"Consolidation Container" means a container that is either a railcar or tanker truck.

"Complaint" means the complaint filed by the United States, LDEQ, and Indiana in this action on January 19, 2022 (Civil No. 1:22-cv-00303 (N.D. Il.)).

"Consent Decree" or "Decree" means this Decree and all appendices identified in Section XXVI (Appendices) and attached hereto.

"Customer" means any business unit or process to which HCC provides solvent-based parts washing services and to which HCC assigns an HCC generator identification number. A person may have more than one HCC generator identification number. A business unit or process to which HCC provides solvent-based parts washing services shall be a Customer even if HCC does not assign an HCC generator identification number. HCC's generator identification number is used for its internal purposes only and is not related to any generator identification number assigned by the Relevant Hazardous Waste Management Program.

"Denver Branch" means the HCC Facility located at 5221 Monroe Street, Denver, Colorado.

"DOJ" means the United States Department of Justice and any of its successor departments or agencies.

"Drum" means a container that is not a Consolidation Container.

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

"Effective Date" means the definition provided in Section XVI.

"End User" means the entity that will use the Re-Use Solvent as an ingredient in an industrial process to make another product or as an effective substitute for a commercial product.

"Fairless Hills Facility" means the HCC Facility located at 199 Canal Road in Fairless Hills, Pennsylvania. HCC's lease of the Fairless Hills Facility expired on or about July 31, 2018, and HCC ceased operations at the Fairless Hills Facility on or about that time.

"Final RCRA Permit" means a permit authorizing treatment, storage, or disposal of hazardous waste that has been issued pursuant to requirements of a Relevant Hazardous Waste Management Program, the period for any appeals has ended, all appeals have been resolved, and the permit has gone into effect.

"HCC" means Heritage-Crystal Clean, LLC.

"HCC Facility" means any facility, including an HCC Waste Screening Facility, owned or operated by HCC.

"HCC Waste Screening Facility" means each HCC Facility where HCC combines the contents of Drums of Used 142 Solvent pursuant to the requirements of Subsection VI.B. of the Consent Decree and each HCC Facility where HCC combines the contents of Drums of Re-Use Solvent pursuant to the requirements of Subsection VI.C of the Consent Decree. Unless alternate or additional HCC Waste Screening Facilities are

established as provided herein, HCC Waste Screening Facilities shall include the Shreveport Hub, 10th Street Facility, Atlanta Hub, and Pennsauken Hub. HCC may establish HCC Waste Screening Facilities at alternate or additional locations in compliance with the requirements of Paragraph 4.

"IDEM" means the Indiana Department of Environmental Management.

"Indiana" means the State of Indiana, acting on behalf of the Commissioner of the Indiana Department of Environmental Management.

"Initiating Parts Washing Service" means using either an HCC-supplied physical parts washer unit or a Customer owned unit, filling such unit(s) with 142 Solvent, and establishing a service interval with the New 142 Solvent Customer.

"LDEQ" means the Louisiana Department of Environmental Quality.

"Manage" means the collection, source separation, storage, transportation, processing, treatment, recovery, and disposal of used solvent.

"New 142 Solvent Customer" means a Customer who has entered into an agreement with HCC for solvent-based parts washing services associated with the 142 Solvent during the period this Consent Decree is in effect.

"Off-Spec Re-Use Solvent" means Re-Use Solvent that contains more than 10 percent water in a Consolidation Container.

"106 Solvent" means a non-aqueous solvent product (i.e., mineral spirits) associated with one of HCC's parts cleaning services that has a product specification with a flash point below 140.

"142 Solvent" means a non-aqueous solvent product (i.e., mineral spirits) associated with one of HCC's parts cleaning services that has a product specification with a flash point of 140 or greater.

"Paragraph" means a portion of this Decree identified by an arabic numeral.

"Parties" mean the United States, LDEQ, Indiana, and HCC.

"Pennsauken Hub" means HCC's Waste Screening Facility located at 1005 Sherman Avenue, Pennsauken, New Jersey.

"Plaintiffs" mean the United States, LDEQ, and Indiana.

"RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq*.

"Re-Use Solvent" means Used 106 Solvent that HCC accepts from Customers for: (a) legitimate direct use or re-use at an HCC Facility, either as an ingredient in an industrial process to make another product or as an effective substitute for a commercial product, or

(b) resale to Re-Use Solvent Customers for legitimate use or re-use as an ingredient in the Re-Use Solvent Customer's industrial processes to make another product or as an effective substitute for a commercial product. Any Off Spec Re-Use Solvent that HCC is required to manage as hazardous waste pursuant to Paragraph 65 below shall no longer qualify as Re-Use Solvent.

"Re-Use Solvent Customer" means any person or entity that purchases Re-Use Solvent from HCC.

"Relevant Hazardous Waste Management Program" includes (a) the federal hazardous waste management program established by the Administrator pursuant to RCRA Subchapter III; or (b) where applicable, the authorized state hazardous waste management program authorized by the Administrator pursuant to Section 3006(b) of RCRA, 42 U.S.C. § 6926(b), to operate in lieu of the federal hazardous waste management program.

"Section" means a portion of this Decree identified by a roman numeral.

"Shreveport Hub" means the HCC Waste Screening Facility located at 3450 Hollywood Avenue, Shreveport, Louisiana.

"State Co-Plaintiffs" means LDEQ and Indiana. Where this Consent Decree refers to an "Applicable State Co-Plaintiff," that means the State Co-Plaintiff with jurisdiction over a particular HCC Facility.

"Subsection" means a portion of a Section of this Decree.

"10th Street Facility" means the HCC Waste Screening Facility located at 3970 West 10th Street, Indianapolis, Indiana.

"United States" means the United States of America, acting on behalf of EPA.

"Used 106 Solvent" means 106 Solvent that HCC accepts after use by a Customer.

"Used 106 Solvent Waste Screening Program" means the activities HCC is required to conduct pursuant to Subsection VI.C (Management of Used 106 Solvent) of the Consent Decree.

"Used 142 Solvent" means 142 Solvent that HCC accepts for reclamation after use by a Customer.

"Used 142 Solvent Program" means the activities HCC is required to perform pursuant to Subsection VI.B (Pre-Acceptance Screening, Transport, and Management of Used 142 Solvent) of the Consent Decree.

## V.     CIVIL PENALTY

9.     Within 30 days after the Effective Date, HCC shall pay the total sum of $1,162,500 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging. The civil penalty payment will be divided between the United States and the Applicable State Co-Plaintiffs as specified below.

10.     Of the total penalty amount, HCC shall pay a civil penalty of $712,880.50, together with interest accruing from the date on which the Consent Decree is lodged with the Court, to the United States by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to HCC by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Northern District of Illinois after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which HCC shall use to identify all payments to the United States required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Brian Recatto
> President & CEO
> Heritage-Crystal Clean LLC
> 2000 Center Dr. Suite East C300
> Hoffman Estates, IL 60192

on behalf of HCC. HCC may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XV (Notices).

11.     At the time of payment, HCC shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to DOJ via email or

regular mail in accordance with Section XV (Notices); and (iii) to EPA in accordance with Section XV (Notices). Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States, et al. v. Heritage-Crystal Clean, LLC and shall reference the civil action number, CDCS Number and DOJ case number 90-7-1-11889.

12.     Of the total penalty amount, HCC shall pay the civil penalty due to each State Co-Plaintiff in the manner described below. Each payment shall be accompanied by a transmittal letter, which shall state that the payment is for the civil penalty pursuant to the Consent Decree in *United States, et al. v. Heritage-Crystal Clean, LLC*, and shall reference the civil action number and DOJ case number 90-7-1-11889.

       a.     Payment of $155,200, together with interest accruing from the date on which the Consent Decree is lodged with the Court, to LDEQ by check, or EFT in accordance with instructions to be provided to HCC by LDEQ following the Effective Date of this Consent Decree. If payment is made by check, the check shall be made payable to the Louisiana Department of Environmental Quality, referencing this civil action, and mailed to: Fiscal Administrator, LDEQ, Office of Management and Finance, P.O. Box 4303. Baton Rouge, LA 70821-4303. At the time of payment, HCC shall send notice that payment has been made to LDEQ in accordance with Section XV (Notices).

       b.     Payment of $294,419.50, together with interest accruing from the date on which the Consent Decree is lodged with the court, shall be made to Indiana by check, electronic payment, or phone payment. Civil penalties are payable by check to the "Environmental Management Special Fund" and shall be mailed to: Indiana Department of Environmental Management, Accounts Receivable, IGCN, Room 1340, 100 North Senate Avenue, Indianapolis, IN, 46204. Accounts Receivable accepts payments online

by e-Check, MasterCard, Visa, or Discover. Please visit www.IN.gov/IDEM. Under

Online Services, click Online Payment options and follow the prompts. Payments can

also be made by phone by calling (317) 234-3099 and following the instructions for

MasterCard, Visa, or Discover payments. A processing fee of $1.00 plus 1.99% will be

charged for credit card payments. A processing fee of $1.00 will be charged for e-Check

payments. The Case Number is required to complete the process.

13.     HCC shall not deduct any penalties paid under this Decree pursuant to this

Section or Section IX (Stipulated Penalties) in calculating its federal, State, or local income tax.

## VI.    COMPLIANCE REQUIREMENTS

### A.    Prohibition on Unpermitted Treatment, Storage or Disposal of Hazardous Waste

14.     Except as provided below in this Consent Decree, HCC shall not treat, store, or

dispose of any hazardous waste at any HCC Facility at any time before:

a.     A Final RCRA Permit for such HCC Facility has been issued, and

b.     HCC completes construction or installation of any hazardous waste

management units authorized by the Final RCRA Permit.

15.     Nothing in Paragraph 14, above, shall be construed to preclude HCC from on-site

accumulation of hazardous waste at any HCC Facility where HCC generates hazardous waste,

consistent with provisions of the Relevant Hazardous Waste Management Program. Nor shall

anything in Paragraph 14, above, be construed to preclude HCC from storing hazardous waste at

any facility during the normal course of transportation, consistent with provisions of the Relevant

Hazardous Waste Management Program governing transfer facilities.

16.     No later than 30 days after the Effective Date of this Consent Decree, HCC shall

submit to IDEM an application for a permit to store and/or treat hazardous waste, including any

Used 142 Solvent that exhibits any hazardous waste characteristic and any Used 106 Solvent identified as a hazardous waste, at HCC's 10th Street Facility. Such application shall be made in accordance with 329 IAC 3.1-13 et seq. and shall include all information required under Indiana Code Section 13-30-2-1(10) and 329 IAC 3.1-13 *et seq.* to support approval of the permit application. If IDEM issues any notice of deficiency relating to HCC's permit application, HCC shall promptly address any identified deficiencies and provide any requested supplemental information according to the deadline specified by IDEM but, if no deadline is specified by IDEM, within 30 days after issuance of the notice of deficiency.

**B.     Pre-Acceptance Screening, Transport, and Management of Used 142 Solvent**

17.     HCC may accept and Manage Used 142 Solvent only in accordance with requirements set forth below in this Subsection VI.B of this Consent Decree.

**i.     Pre-Acceptance Screening of New 142 Solvent Services**

18.     Before Initiating any New Parts Washing Service for any 142 Solvent Customer, HCC shall review the potential Customer's business to assess the possibility for contamination of parts cleaning solvent (e.g., activities or operations that could allow pesticides, herbicides or other chemical constituents to get into parts washers) and, if applicable, identify measures to safeguard parts washing solvent from potential sources of contamination. HCC shall continue to implement its procedures for pre-acceptance screening of New 142 Solvent Services as described in Appendix A or any revisions to such procedures agreed to in writing by the United States (after consultation with State Co-Plaintiffs) and HCC. HCC shall periodically review its pre-acceptance screening procedures for New 142 Solvent Services to assess the effectiveness of such procedures in reducing or eliminating Used 142 Solvent applications that generate hazardous waste and identify any revisions to pre-acceptance screening procedures that HCC

makes to enhance the effectiveness of its procedures. The United States and HCC may by written agreement approve revisions to the pre-acceptance screening procedures.

19.    Prior to Initiating Parts Washing Services to any New 142 Solvent Customer, HCC shall provide such potential Customer with the most recent agreed version of the customer education materials. A copy of the current customer education materials is attached as Appendix B. The United States (after consultation with State Co-Plaintiffs) and HCC may, by written agreement, adopt revisions to the customer education materials.

20.    Prior to Initiating New Parts Washing Service for any potential New 142 Solvent Customer, HCC shall provide such potential New 142 Solvent Customer with a copy of the most recent agreed version of the generator certification form. The current generator certification form is attached as Appendix C. The United States (after consultation with State Co-Plaintiffs) and HCC may, by written agreement, adopt revisions to the generator certification form Notwithstanding the forgoing, HCC may revise portions of the generator certification form that relate solely to the Re-Use Program Certification, the Aqueous Program Certification, and the Used Oil/Vacuum Service certification without prior written agreement from the United States. Without prior written agreement from the United States, HCC may also revise or eliminate the following portions of the generator certification form: (a) the date the form was filled out (provided that this information is recorded by some other method), (b) the customer's phone number, (c) the work order number associated with the customer, (d) the form number, and (e) the form revision date.

   a.    HCC shall ensure that the most recent agreed version of the generator certification form is completed by each potential New 142 Solvent Customer prior to Initiating Parts Washing Services for such Customer.

21.     Before agreeing to accept Drums of Used 142 Solvent from any New 142 Solvent Customer who indicates in the generator certification form that it is also a large quantity generator or small quantity generator of hazardous waste, HCC shall sample and analyze such Customer's Used 142 Solvent for, at a minimum, each of the following parameters: Flashpoint, Cadmium, Chromium, Lead, Tetrachlorethylene, and Trichloroethylene. All such sampling and analysis shall be performed in accordance with the provisions of the approved Sampling and Analysis Plan required pursuant to Subsection VI.B.iv, below. For each Customer whose Used 142 Solvent is sampled and analyzed pursuant to this Paragraph:

a.     If no such sample exhibits one or more hazardous waste characteristics for any parameter evaluated in accordance with the provisions of the approved Sampling and Analysis Plan required pursuant to Subsection VI.B.iv, below, HCC may thereafter accept the Used 142 Solvent from such Customer in accordance with the provisions set forth below in Paragraphs 22-26, below, and thereafter Manage such solvent in accordance with the provisions of Subsection VI.B of this Consent Decree.

b.     If any such sample exhibits one or more hazardous waste characteristics for any parameter evaluated in accordance with the provisions of the approved Sampling and Analysis Plan required pursuant to Subsection VI.B.iv, below, HCC may not accept and Manage any Used 142 Solvent from such Customer as non-hazardous waste until samples of such Customers Used 142 collected during two consecutive service intervals do not exceed any hazardous waste characteristic for any parameter evaluated in accordance with the provisions of the approved Sampling and Analysis Plan required pursuant to Subsection VI.B.iv, below.

### ii.     Acceptance and Transport of Used 142 Solvent

22.     HCC may accept Used 142 Solvent only in accordance with provisions set forth in this Subsection VI.B.ii.

23.     HCC may accept Used 142 Solvent only from Customers that have completed a generator certification form. HCC shall require all Used 142 Solvent Customers to complete the most recent agreed version of the generator certification form (Appendix C Revised 142 Solvent Generator Certification Form) according to the following schedule:

    a.     Completion by a total of at least 20% of Customers within six months after the Effective Date;

    b.     Completion by a total of at least 50% of Customers within one year after the Effective Date; and

    c.     Completion by all Customers within eighteen months after the Effective Date of the Consent Decree.

At the same time HCC distributes generator certification forms to a Customer pursuant to this Paragraph, it shall also provide such Customer with a copy of the most recent agreed version of the educational materials attached as Appendix B.

24.     In the case of each Customer that represented in its generator certification form that its Used 142 Solvent is not hazardous waste, HCC may accept Drums of Used 142 Solvent from such Customer only after:

    a.     HCC completes pre-acceptance screening, in accordance with the procedures set forth in Appendix A, or subsequent revisions to such procedures agreed to in writing by the United States and HCC, of the contents of each Drum of Used 142 Solvent tendered for transport; and

b.      HCC completes any sampling of the Customer's Used 142 Solvent

required pursuant to Paragraph 40, below, and determines whether such Used 142

Solvent exhibits one or more hazardous waste characteristics for any parameter identified

in Paragraph 30.d.ii, below.

25.      In each case where HCC accepts Used 142 Solvent from a Customer that

represented in its generator certification form that its Used 142 Solvent is not hazardous waste,

HCC shall transport such Used 142 Solvent only to an HCC Waste Screening Facility, unless

sampling data indicates that such Used 142 Solvent is hazardous waste, in which case HCC shall

transport and Manage the hazardous Used 142 Solvent in accordance with Paragraph 27 below.

26.      Nothing in Paragraph 25 above, shall be construed to prohibit HCC from

transporting Drums of Used 142 Solvent to any other HCC Facility that temporarily receives and

holds Used 142 Solvent Drums during the normal course of transportation prior to delivering

such Drums to an HCC Waste Screening Facility where the waste is consolidated, provided that

HCC may not consolidate the contents of any Used 142 Solvent Drums prior to delivering such

Drums to any of the HCC Waste Screening Facilities.

27.      In the case of any Used 142 Solvent that has been identified as a hazardous waste,

HCC may accept such Used 142 Solvent for transport, but HCC shall transport such solvent only

in accordance with applicable requirements of the Relevant Hazardous Waste Management

Program. HCC shall Manage Used 142 Solvent identified as hazardous waste at facilities owned

or operated by HCC only in accordance with terms and conditions of applicable permits and

applicable requirements of the Relevant Hazardous Waste Management Program.

28.      Nothing in Subsection VI.B.ii shall be construed to authorize acceptance and

transport of hazardous waste without a hazardous waste manifest, and Plaintiffs reserve all

remedies they may have with respect to any unmanifested shipments of hazardous waste that occur after the date of lodging of the Consent Decree.

### iii.    Tracking Used 142 Solvent Accepted by HCC

29.    HCC shall establish and maintain a system for tracking the movement and disposition of Drums and Consolidation Containers of Used 142 Solvent Managed by HCC.

a.    This tracking system shall, at a minimum, track and record all of following information for each Drum of Used 142 Solvent accepted by HCC:

i.    The identity of the Customer that generated the Used 142 Solvent;

ii.    The date that HCC accepted the Drum;

iii.    If HCC subsequently rejected the Drum for any reason, the date on which HCC rejected the Drum, and the date that the Drum was removed from the facility where the Drum was rejected;

iv.    The location of each HCC Facility that received the Drum prior to delivery of the Drum to an HCC Waste Screening Facility;

v.    The dates that the Drum arrived at, and was removed from, each such HCC Facility referred to in Subparagraph 29.a.iv;

vi.    The location of the HCC Waste Screening facility that received the Drum;

vii.    The date that the Drum arrived at the HCC facility referred to in Subparagraph 29.a.iv;

viii.    If HCC consolidated the contents of the Drum into a Consolidation Container, the unique identifier of such Consolidation Container;

ix.    The bar code identifier for each Drum sampled in accordance with the requirements of Subsection VI.B.v of this Consent Decree;

x.      For each Drum sampled pursuant to the requirements of Subsection VI.B.v of this Consent Decree, the date on which HCC received the results of analysis of such sample; and

xi.      For each sampled Drum that exhibited one or more hazardous waste characteristics, the date on which HCC removed the Drum from the HCC Waste Screening Facility where the Drum was sampled, the hazardous waste manifest tracking number and the location of the facility to which such Drum was shipped.

b.      For each HCC Waste Screening Facility, the tracking system shall, at a minimum, track and record all of the following information with respect to Consolidation Containers of Used 142 Solvent:

i.      The unique identifier of each Consolidation Container used to consolidate Drums of Used 142 Solvent at such HCC Waste Screening Facility;

ii.      The unique identifier of each Consolidation Container of Used 142 Solvent sampled by HCC pursuant to the requirements of Subsection VI.B.vi of this Consent Decree;

iii.      For each Used 142 Solvent Consolidation Container sampled pursuant to the requirements of Subsection VI.B.vi of this Consent Decree, the date on which HCC received the results of analyses of such samples; and

iv.      For each sampled Consolidation Container of Used 142 Solvent that exhibited one or more hazardous waste characteristics, the date on which HCC removed the Consolidation Container from the HCC Waste Screening

Facility, the hazardous waste manifest tracking number, and the location of the facility to which such Consolidation Container was shipped.

### iv.    Sampling and Analysis Plan

30.   <u>Sampling and Analysis Plan.</u> No later than 60 days after the Effective Date of this Consent Decree, HCC shall submit to Plaintiffs for review and approval a Sampling and Analysis Plan that, at a minimum, includes a description of all of the following elements:

a.    The process that will be used at each HCC Waste Screening Facility to ensure that Used 142 Solvent Drums sampled during each monthly sampling event conducted pursuant to Paragraphs 32-35, below, are randomly selected from the universe of Drums received at such HCC Waste Screening Facility during that month;

b.    The methodology and process that HCC will use to collect representative samples from Used 142 Solvent Drums sampled pursuant to Paragraph 21, above, as well as from Used 142 Solvent Drums sampled during each monthly sampling event required pursuant to the requirements of Paragraphs 32-35, below;

c.    The methodology and process that HCC will use to collect representative samples from Consolidation Containers pursuant to the requirements of Paragraphs 42-44, below; and

d.    All analytical methods and procedures that will be used to analyze samples collected pursuant to the requirements of Paragraphs 32-35 and 42-44, below, for the following sampling parameters: flash point, cadmium, chromium, lead, methyl ethyl ketone, trichloroethylene, tetrachlorethylene, carbon tetrachloride, chlorobenzene, chloroform, and 1,2 dichloroethane, as well as analytical methods and procedures that will be used to analyze samples collected pursuant to the requirements of Paragraph 21.

i.      Analytical methods and procedures identified in the Sampling and Analysis Plan shall be consistent with methods referred to in 40 C.F.R. § 261.21 (in the case of flash point), and 40 C.F.R. § 261.24 (in the case of other parameters specified in Paragraph 30.d, above); provided, however, that analytical methods identified in the Sampling and Analysis Plan need not require filtration of samples prior to analysis.

ii.      Analytical methods and procedures identified in the Sampling and Analysis Plan shall be sufficiently sensitive to reliably achieve the following limits:

| | |
|---|---|
| cadmium | 1.0 milligrams per liter (mg/L) |
| chromium | 5.0 mg/L |
| lead | 5.0 mg/L |
| methyl ethyl ketone | 200 mg/L |
| trichloroethylene | 0.5 mg/L |
| tetrachloroethylene | 0.7 mg/L |
| carbon tetrachloride | 0.5 mg/L |
| chlorobenzene | 100 mg/L |
| chloroform | 6.0 mg/L |
| 1,2 dichloroethane | 0.5 mg/L |

31.      Following Plaintiffs' approval of the Sampling and Analysis Plan, HCC shall ensure that all samples required pursuant to Subsections VI.B.v and VI.B.vi of this Consent Decree are collected and analyzed in accordance with all provisions of the approved Sampling and Analysis Plan.

**v.      Waste Screening Program–Used 142 Solvent Drums**

32.      Following Plaintiffs' approval of the Sampling and Analysis Plan, HCC shall implement a waste screening program applicable to all Used 142 Solvent Drums not identified as hazardous waste by the waste generator. All such Drums shall be subject to random sampling at an HCC Waste Screening Facility in accordance with the requirements set forth below in

Subsection VI.B.v and the provisions of the approved Sampling and Analysis Plan. HCC's waste screening program may not exclude Used 142 Solvent Drums from any Customers, regardless of the volume of Used 142 Solvent generated by the Customer and regardless of whether a particular Customer's waste was previously sampled as part of any Customer acceptance process.

33.     In accordance with the random selection methodology and procedures described in the approved Sampling and Analysis Plan, each HCC Waste Screening Facility shall, over the course of each month, randomly select Drums subject to the waste screening program for sampling. At each HCC Waste Screening Facility, the number of randomly selected Drums sampled and analyzed during any given month shall, at a minimum, meet the requirements specified below in Paragraphs 34 and 35 of the Consent Decree. HCC shall collect and analyze samples from randomly selected Drums in accordance with the requirements set forth below in Subsection VI.B.v of the Consent Decree and the provisions of the approved Sampling and Analysis Plan.

34.     During the first three months after approval of the Sampling and Analysis Plan, HCC shall collect samples of Used 142 Solvent from at least 10 randomly selected Drums per month at each HCC Waste Screening Facility. After the initial three month sampling period, the number of randomly selected Drum samples that HCC is required to collect and analyze per month at each HCC Waste Screening Facility shall be adjusted, either downward or upward, for the next three-month sampling period, as provided below in Paragraph 35 of the Consent Decree, based on the results of all Used 142 Solvent Drum samples collected at such HCC Waste Screening Facility in accordance with requirements of Subsection VI.B.v of the Consent Decree.

35.     At the end of each three-month sampling period, HCC shall separately evaluate, for each HCC Waste Screening Facility, the results of all Used 142 Solvent Drum samples collected at such HCC Waste Screening Facility pursuant to the requirements of Subsection VI.B.v of the Consent Decree, including Used 142 Solvent Drum samples collected during such three-month sampling period.

a.      Provided that an HCC Waste Screening Facility has collected and analyzed the total number of Used 142 Drum samples required to be collected at such HCC Waste Screening Facility under Paragraphs 34 or 35 during the relevant three month sampling period, such HCC Waste Screening Facility may reduce the number of monthly samples it is required to collect during the next three month sampling period, as provided below in this Subparagraph 35.a. If fewer than 10 percent of all Used 142 Solvent Drum samples collected pursuant to this Consent Decree at such HCC Waste Screening Facility during such three-month sampling period exhibit one or more hazardous waste characteristics, HCC may reduce the number of randomly selected Drum samples that HCC is thereafter required to collect at such HCC Waste Screening Facility by two Drums per month (for example, from 10 Drums per month to 8 Drums per month) during the next three-month period; provided, however, that in no event may HCC collect fewer than two Used 142 Solvent Drum samples per month at each HCC Waste Screening Facility.

b.      If 10 percent or more of all Used 142 Solvent Drum samples collected pursuant to this Consent Decree at a particular HCC Waste Screening Facility during any three-month sampling period referred to in Paragraphs 34 or 35 exhibit one or more hazardous waste characteristics, HCC shall thereafter increase the number of randomly

selected Drum samples that HCC is required to collect at such HCC Waste Screening Facility by two Drums per month (for example, from 10 Drums per month to 12 Drums per month) for the next three-month period.

36.     Prohibition on Composite Sampling. HCC shall not utilize composite sampling on any of the Used 142 Solvent Drums sampled pursuant to the requirements of Paragraphs 33-35, above.

37.     Analytical Parameters. HCC shall promptly analyze each Used 142 Drum sample collected pursuant to Paragraphs 33-35, above, for all of the following parameters: flash point, cadmium, chromium, lead, methyl ethyl ketone, trichloroethylene, tetrachloroethylene, carbon tetrachloride, chlorobenzene, chloroform, 1,2- dichloroethane, except as provided below in this Paragraph.

   a.     No sooner than 12 calendar months following approval of the Sampling and Analysis Plan, HCC may request Plaintiffs' approval to reduce or discontinue requirements to analyze the concentrations of methyl ethyl ketone, carbon tetrachloride, chlorobenzene, chloroform, 1,2- dichloroethane in Used 142 Solvent Drum samples subsequently collected at any particular HCC Waste Screening Facility, consistent with requirements set forth below in Subparagraphs 37.b–e. Nothing in this Subparagraph shall be construed to provide for reduction or discontinuation of any requirements governing analysis of any other analytical parameter.

   b.     Prior to any reduction or discontinuation of requirements to analyze the concentration of particular analytical parameters in Used 142 Solvent Drum samples collected at any HCC Waste Screening Facility, Plaintiffs shall review data regarding the concentrations of methyl ethyl ketone, carbon tetrachloride, chlorobenzene, chloroform,

and 1,2-dichloroethane detected in all Used 142 Solvent Drum samples collected at such facility over at least the last 12 consecutive months.

    c.    Plaintiffs may reduce or discontinue a requirement to analyze Used 142 Solvent Drum samples from a particular HCC Waste Screening Facility for any parameter identified in Subparagraph 37.a, above, for good cause shown; provided, however, that nothing in this Subparagraph shall be construed to require Plaintiffs to reduce or discontinue a requirement to analyze any Used 142 Solvent Drum sampling parameter at a particular HCC Waste Screening Facility if any Used 142 Solvent Drum sample collected at such HCC Waste Screening Facility during the preceding 12 consecutive months contained concentrations of such parameter at or above the concentration specified for such parameter in Subparagraph 30.d.ii.

    d.    Any decision by Plaintiffs to reduce or discontinue a requirement to analyze the concentration of any parameter identified in Subparagraph 37.a, above, shall be set forth in writing and effective upon HCC's receipt of a written notification of such decision.

    e.    The Plaintiffs shall review any such request and approve, disapprove, or approve with modifications the changes requested. If HCC disagrees with the Plaintiffs' decision, HCC may contest the decision in accordance with procedures set forth in Section XI (Dispute Resolution). If Plaintiffs have not communicated a decision to HCC within 60 days of HCC's submission of a request pursuant to Paragraph 37.a, HCC may make a written request to Plaintiffs for a meeting to discuss the matter. Plaintiffs agree to schedule such a meeting upon request by HCC.

38.    Segregation and Management of Sampled Drums. At each HCC Waste Screening Facility, HCC shall segregate each sampled Used 142 Solvent Drum pending receipt of the results of analysis of the contents of such Drum. HCC may not transfer the contents of any sampled Used 142 Solvent Drum into a Consolidation Container or otherwise combine the contents of any such sampled Drum with the contents of any other Used 142 Solvent unless and until HCC receives sample results indicating whether such sampled Drum exhibits one or more hazardous waste characteristics. If any Drum sampled pursuant to the requirements of Subsection VI.B.v exhibits one or more hazardous waste characteristics, HCC shall not consolidate the contents of such Drum into any Consolidation Container, unless HCC

a.    thereafter manages the entire contents of such Consolidation Container as hazardous waste that will be recycled; and

b.    removes the Consolidation Container from the HCC Waste Screening Facility within 10 days after HCC received analytical results indicating that such Used 142 Solvent Drum exhibited one or more hazardous waste characteristics.

39.    Nothing in this paragraph shall be construed to alter HCC's obligation to sample Consolidation Containers as provided in Subsection VI.B.vi, regardless of whether the Consolidation Container is managed as hazardous waste pursuant to Subparagraph 38.a. If any Used 142 Solvent Drum sampled pursuant to this Consent Decree exhibits one or more hazardous waste characteristics, HCC shall promptly take appropriate steps to ensure that such Drum is Managed as hazardous waste in accordance with the Relevant Hazardous Waste Management Program.

a.    HCC shall promptly, but in no event later than one day after receiving the sampling results, identify the Customer that generated each such Drum and make an entry

in its electronic system used to manage its Customers to halt Used 142 Solvent service to the Customer. In addition, HCC shall notify the Customer in writing that its Used 142 Solvent exhibits hazardous waste characteristics; in no case shall such written notification be made more than 20 days after HCC receives the sample results applicable to such Drum.

      b.     If any such Drum is located at an HCC Waste Screening Facility that does not have a permit to treat, store or dispose of hazardous waste, HCC shall, as expeditiously as practicable, either return such Drum to the Customer that generated the waste or transport such Drum to a facility authorized to treat, store, or dispose of hazardous waste. In no event may HCC retain such Drum at such HCC Waste Screening Facility for more than 10 days after HCC received sample results pertaining to such Drum.

      c.     Pending removal of any such Drum from an HCC Waste Screening Facility, HCC shall label such Drum as hazardous waste, including the applicable hazardous waste characteristic and the date on which HCC received the sample results indicating that the Used 142 Solvent exhibited one or more hazardous waste characteristics, and HCC shall segregate such Drum in the HCC Waste Screening Facility's hazardous waste accumulation area.

40.     If any Used 142 Solvent Drum sampled pursuant to Subsection VI.B.v of the Consent Decree exhibits one or more hazardous waste characteristics, HCC shall not thereafter accept any Used 142 Solvent Drums from the Customer that generated the sampled Drum, unless, prior to HCC's acceptance of such Drums:

      a.     Such Drums were designated as hazardous waste by the Customer; or

b.        HCC has complied with the requirements set forth below in this Subparagraph:

i.        Provided the Customer with the most recent approved version of the customer educational materials in Appendix B to improve the Customer's understanding of how hazardous constituents could get introduced into its Used 142 Solvent, and reviewed the Customer's business with the Customer to assess potential sources of contamination of Used 142 Solvent;

ii.        Ensured that the Customer completes the worksheet attached as Appendix D; and

iii.        Conducted sampling in accordance with the provisions of the approved Sampling and Analysis Plan that confirms either:

(1)        That the Used 142 Solvent Drums from such Customer do not exhibit one or more hazardous waste characteristics, or

(2)        That two consecutive shipments of Used 142 Solvent Drums from such Customer did not exhibit any hazardous waste characteristics.

41.        Consolidation of the contents of Used 142 Solvent Drums. At each HCC Waste Screening Facility, HCC shall consolidate the contents of all Used 142 Solvent Drums not identified as hazardous waste into Consolidation Containers, subject to the requirements of Paragraph 38, above. Nothing in this Paragraph shall be construed to preclude HCC from transferring Used 142 Solvent Drums from one HCC Waste Screening Facility to a different HCC Waste Screening Facility, provided that the contents of such Drums are consolidated into Consolidation Containers in accordance with the requirements of this Paragraph.

a.    HCC shall keep such Consolidation Containers closed except when Used 142 Solvent is being added to the Consolidation Containers or when such Consolidation Containers are sampled in accordance with the requirements of this Consent Decree.

b.    HCC shall not consolidate the contents of such Used 142 Solvent Drums with any other materials.

c.    For each Consolidation Container used to consolidate Used 142 Solvent, HCC shall, using the tracking system referred to in Paragraph 29, above, maintain a record identifying all Drums consolidated in such Consolidation Container and the Customers who generated such Drums.

d.    Consolidated Used 142 Solvent shall be subject to further waste screening in accordance with requirements set forth in Subsection VI.B.vi, below.

**vi.    Waste Screening Program–Consolidation Containers**

42.    Following Plaintiffs' approval of the Sampling and Analysis Plan referred to in Paragraph 30, above, HCC shall implement a waste screening program at each HCC Waste Screening Facility. The waste screening program shall apply to each Consolidation Container that contains Used 142 Solvent Drums. Each such Consolidation Container at each HCC Waste Screening Facility shall be subject to sampling in accordance with the requirements set forth below in this Subsection VI.B.vi and the provisions of the approved Sampling and Analysis Plan prior to shipment of such Consolidation Container. With respect to the 10th Street Facility, the Consolidation Container waste screening program shall apply to Consolidation Containers of Used 142 Solvent that HCC fills at the 10th Street Facility but not to Consolidation Containers of Used 142 Solvent that HCC receives from another HCC Waste Screening Facility.

43.    Each sample collected pursuant to the requirements of Subsection VI.B.vi shall be collected when the Consolidation Container is ready for shipment. HCC shall collect each such

sample no later than one day after the final Used 142 Solvent Drum is added to the Consolidation Container.

44.     <u>Sampling rate</u>. The rate that Consolidation Containers are sampled pursuant to Subsection VI.B.vi may vary over time depending on previous Consolidation Container sampling results, as provided below in this Paragraph.

     a.     HCC shall collect a representative sample from every Consolidation Container that HCC uses to consolidate Used 142 Solvent at each HCC Waste Screening Facility, unless the conditions specified below in this Paragraph are satisfied.

     b.     At any time after HCC has collected at least 40 samples from Consolidation Containers as provided in Subparagraph a, if fewer than one percent of the cumulative total of all Consolidation Container samples collected pursuant to Subsection VI.B.vi of the Consent Decree exhibit one or more hazardous waste characteristics, then HCC may reduce the required Consolidation Container sampling rate as provided below in this Subparagraph. As long as HCC meets the requirements for reduced sampling pursuant to this Subparagraph, HCC shall collect samples at each HCC Waste Screening Facility from the first railcar ready for shipment from such Facility after the criteria for reduced sampling are satisfied, the fifth railcar ready for shipment from such Facility after the criteria for reduced sampling are satisfied, and every fourth railcar ready for shipment thereafter.

     c.     Following any reduction of the Consolidation Container sampling rate pursuant to Subparagraph 44.b, HCC shall recalculate the percentage of the cumulative total of all sampled Consolidation Containers that exhibit one or more hazardous waste characteristics whenever HCC receives any sample result indicating that a Consolidation

Container sampled pursuant to Subsection VI.B.vi exhibited one or more hazardous waste characteristics. At any time such percentage is one percent or more, HCC shall resume sampling Consolidation Containers in accordance with Subparagraph 44.b. For purposes of this Subparagraph, "cumulative total" refers to all Consolidation Container samples collected pursuant to Subsection VI.B.vi, including the initial 40 samples referred to in Subparagraph 44.b.

45. <u>Prohibition on Composite Sampling</u>. HCC shall not composite any samples collected from Consolidation Containers pursuant to the requirements of Paragraphs 42-44, above.

46. <u>Analytical Parameters</u>. HCC shall promptly analyze Consolidation Container samples collected pursuant to Paragraphs 42-44, above, for all of the following parameters: flash point, cadmium, chromium, lead, methyl ethyl ketone, trichloroethylene, tetrachloroethylene, carbon tetrachloride, chlorobenzene, chloroform, 1,2- dichloroethane, except as provided below in this Paragraph.

a. No sooner than 12 calendar months following approval of the Sampling and Analysis Plan, HCC may request Plaintiffs' approval to reduce or discontinue requirements to analyze the concentrations of methyl ethyl ketone, carbon tetrachloride, chlorobenzene, chloroform, 1,2- dichloroethane in Used 142 Solvent samples subsequently collected from Consolidation Containers, consistent with requirements set forth below in Subparagraphs 46.b–e, below. Plaintiffs may reduce or discontinue requirements applicable to analysis of one or more of the following parameters: methyl ethyl ketone, carbon tetrachloride, chlorobenzene, chloroform, 1,2- dichloroethane.

Nothing in this Subparagraph shall be construed to provide for reduction or discontinuation of any requirements governing analysis of any other analytical parameter.

b.       The Plaintiffs shall review any such request and approve, disapprove, or approve with modifications the changes requested. If HCC disagrees with the Plaintiffs' decision, HCC may contest the decision in accordance with procedures set forth in Section XI (Dispute Resolution). If Plaintiffs have not communicated a decision to HCC within 60 days of HCC's submission of a request pursuant to Paragraph 46.a, HCC may make a written request to Plaintiffs for a meeting to discuss the matter. Plaintiffs agree to schedule such a meeting upon request by HCC.

c.       Prior to any reduction or discontinuation of requirements to analyze the concentration of particular analytical parameters in Used 142 Solvent samples collected pursuant to the requirements of Paragraphs 42-44, above, Plaintiffs shall review data regarding the concentrations of methyl ethyl ketone, carbon tetrachloride, chlorobenzene, chloroform, and 1,2-dichloroethane detected in all Used 142 Solvent samples collected from Consolidation Containers over at least the last 12 consecutive months.

d.       Plaintiffs may reduce or discontinue a requirement to analyze samples collected from Consolidation Containers for any parameter identified in Subparagraph 46.a, above, for good cause shown; provided, however, that nothing in this Subparagraph shall be construed to require Plaintiffs to reduce or discontinue a requirement to analyze any Consolidation Container analytical parameter if any of the Used 142 Solvent samples collected from Consolidation Containers during the preceding 12 consecutive months contained concentrations of such parameter at or above the concentration specified for such parameter in Subparagraph 30.d.ii.

e.      Any decision by Plaintiffs to reduce or discontinue a requirement to analyze the concentration of any parameter identified in Subparagraph 46.a, above, shall be set forth in writing and effective upon HCC's receipt of a written notification of such decision.

47.      If any Consolidation Container sampled pursuant to Paragraphs 42-44, above, does not exhibit one or more hazardous waste characteristics, HCC shall arrange to transport the Consolidation Container to the 10th Street Facility.

48.      If any Consolidation Container sampled pursuant to Paragraphs 42-44, above, exhibits one or more hazardous waste characteristics, HCC shall promptly, but in no event later than one day after receiving the sample result, mark the Consolidation Container with:

- a placard or label with the words "hazardous waste" and an indication of the hazards; and

- the date on which HCC received the sample results indicating that the Used 142 solvent exhibited one or more hazardous waste characteristics.

HCC shall take appropriate steps to ensure that such Consolidation Container is Managed as hazardous waste in accordance with Paragraph 27, above. If any such Consolidation Container is located at an HCC Waste Screening Facility that does not have a permit to treat, store or dispose of hazardous waste, HCC shall, as expeditiously as practicable, but in no event longer than 10 days after receiving the sample results pertaining to such Consolidation Container, remove the Consolidation Container from the HCC Waste Screening Facility and transport such Consolidation Container in accordance with Paragraph 27, above, to a facility authorized to treat, store or dispose of hazardous waste.

49.      In each case where a Consolidation Container sampled pursuant to Paragraphs 42-44, above, exhibits one or more hazardous waste characteristics, HCC shall take all the following

steps in an effort to identify potential sources of waste that caused the Consolidation Container to exhibit one or more hazardous waste characteristics.

     a.     HCC shall promptly identify all Customers whose Used 142 Solvent Drum contents were consolidated in such Consolidation Container; in no case shall such identification be made more than five days after HCC receives the sample results applicable to such Drum.

     b.     For each Customer identified pursuant to the requirements of Subparagraph 49.a, above, HCC shall determine whether HCC has previously collected a Used 142 Solvent Drum sample from such Customer and analyzed such sample for at least the parameters identified in Subparagraph 21, above.

     c.     For each Customer identified pursuant to the requirements of Subparagraph 49.a, above, that indicated in its generator certification form that it is also a large quantity generator or small quantity generator of hazardous waste, if HCC has not previously analyzed a Used 142 Solvent Drum sample from such Customer as provided in Subparagraph 49.b, above, then HCC shall collect and analyze a Used 142 Solvent Drum sample from such Customer in accordance with provisions of the approved Sampling and Analysis Plan referred to in Paragraph 30, above, prior to accepting any subsequent shipments of Used 142 Solvent from such Customer.

50.     If any Used 142 Solvent Drum sampled pursuant to Paragraph 49.c, above, exhibits one or more hazardous waste characteristics, HCC shall not accept any Used 142 Solvent Drums from the Customer that generated the sampled Drum, unless, prior to HCC's acceptance of the waste:

     a.     Such Drums were designated as hazardous waste by the Customer; or

     b.     HCC has complied with the requirements set forth below in this Subparagraph:

          i.     Provided the Customer with the most recent approved version of the customer educational materials in Appendix B to improve the Customer's understanding of how hazardous constituents could get introduced into its Used 142 Solvent, and reviewed the Customer's business with the Customer to assess potential sources of contamination of Used 142 Solvent;

          ii.     Ensured that the Customer completes the worksheet attached as Appendix D; and

          iii.     Conducted sampling in accordance with the provisions of the approved Sampling and Analysis Plan that confirms either:

          (1)     That the particular Used 142 Solvent Drums from such Customer do not exhibit one or more hazardous waste characteristics, or

          (2)     That two consecutive shipments of Used 142 Solvent Drums from such Customer did not exhibit any hazardous waste characteristics.

**C.    Management of Used 106 Solvent**

51.     HCC may accept and Manage Used 106 Solvent only in accordance with provisions set forth below in Subsection VI.C of the Consent Decree. In the case of Used 106 Solvent that has not been identified as hazardous waste, HCC shall manage all such solvent as Re-Use Solvent, except as provided in Subparagraphs 65.c and 65.d, below.

     a.     HCC may not process such Re-Use Solvent by gravity separation, any form of distillation, or any other method, in order to do any of the following:

        i.        meet any Re-Use Solvent Customer product specifications or acceptance criteria of any End Users;

        ii.      otherwise ensure that such solvent is suitable for use or reuse by an End User as an ingredient in an industrial process to make another product or as an effective substitute for a commercial product; or

        iii.     ensure that the water content of the Re-Use Solvent does not exceed 10 percent by volume.

        b.      Nothing in Subparagraph 51.a.i–iii, above, shall be construed to limit any processing of Re-Use Solvent authorized under Paragraph 66, below.

52.      HCC shall implement measures to ensure that Re-Use Solvent:

        a.      does not contain more than 10 percent water by volume, except as provided in Paragraphs 64 and 65, below;

        b.      is acceptable for use by the End User without reclaiming; and

        c.      is legitimately used by HCC or sent to Re-Use Solvent Customers for legitimate use or reuse in a timely manner and in no case is accumulated speculatively by HCC as defined at 40 C.F.R. § 261.1(c)(8).

53.      HCC shall develop and maintain a list of all End Users of Re-Use Solvent. For each End User, HCC shall maintain a record of any specifications or acceptance criteria relating to the composition of Re-Use Solvent. Upon request, any information that HCC is required to maintain pursuant to this Paragraph shall be provided to Plaintiffs.

54.      Within 30 days after the Effective Date of the Consent Decree, HCC shall submit to Plaintiffs a list of End Users who are able to directly use or reuse Used 106 Solvent that contains more than 10 percent water by volume (also referred to as "Off-Spec Re-Use Solvent")

without the need to reclaim such Off-Spec Re-Use Solvent by gravity separation, distillation, or otherwise prior to use of such solvent.

55.     Nothing in Paragraphs 51-54, above, shall be construed to prohibit HCC from Managing Used 106 Solvent as a hazardous waste instead of as Re-Use Solvent, provided that:

      a.     HCC transports any such solvent only in accordance with applicable requirements of the Relevant Hazardous Waste Management Program to facilities permitted or authorized to accept and Manage hazardous waste;

      b.     HCC segregates any such solvent from Re-Use Solvent; and

      c.     if HCC transports any such solvent to any HCC Facility, HCC Manages such solvent only in accordance with terms and conditions of applicable permits and applicable requirements of the Relevant Hazardous Waste Management Program.

      **i.     Acceptance and Transport of Used 106 Solvent**

56.     Before accepting Drums of Used 106 Solvent for Management as Re-Use Solvent, HCC shall conduct a pre-acceptance screening of the contents of each such Drum in accordance with the procedures set forth in Appendix A.

57.     HCC may accept and transport Re-Use Solvent without a hazardous waste manifest.

58.     HCC shall transport Drums of Re-Use Solvent only to an HCC Waste Screening Facility. Nothing in this Paragraph shall be construed to prohibit HCC from holding shipments of Used 106 Solvent at any transportation related facility during the normal course of transportation provided that HCC may not consolidate the contents of any Re-Use Solvent Drums prior to delivering such Drums to any of the HCC Waste Screening Facilities.

59.     Nothing in Paragraphs 57 or 58, above, shall be construed to authorize acceptance and transport of hazardous waste (as opposed to Re-Use Solvent) without a hazardous waste

manifest, and Plaintiffs reserve all remedies they may have with respect to any unmanifested shipments of hazardous waste that occur after the date of lodging of the Consent Decree.

60.     In the case of any Used 106 Solvent that has been identified as hazardous waste, HCC shall transport such solvent only in accordance with applicable requirements of the Relevant Hazardous Waste Management Program, and only to facilities permitted or authorized to accept and Manage hazardous waste. If HCC transports any Used 106 Solvent identified as a hazardous waste to any HCC Facility, HCC shall Manage such Used 106 Solvent only in accordance with terms and conditions of applicable permits and applicable requirements of the Relevant Hazardous Waste Management Program.

**ii.     Tracking Used 106 Solvent Accepted by HCC**

61.     HCC shall establish and maintain a system for tracking the movement and disposition of Drums and Consolidation Containers of Used 106 Solvent handled by HCC.

   a.     This tracking system shall, at a minimum, track and record all of following information for each Drum of Used 106 Solvent accepted by HCC:

      i.     the date that HCC accepted the Drum;

      ii.     if HCC subsequently rejected the Drum for any reason, the date on which HCC rejected the Drum, and the date that the Drum was removed from the facility where the Drum was rejected;

      iii.     an identifier for each HCC Facility that received the Drum prior to delivery of the Drum to an HCC Waste Screening Facility;

      iv.     the dates that the Drum arrived at, and was removed from, each such HCC Facility referred to in Subparagraph 61.a.iii;

      v.     an identifier for the HCC Waste Screening Facility that received the Drum;

vi.     the date that the Drum arrived at the HCC Waste Screening

Facility referred to in Subparagraph 61.a.v, above; and

b.      For each HCC Waste Screening Facility, the tracking system shall, at a

minimum, track and record all of the following information with respect to Consolidation

Containers of Used 106 Solvent:

i.      the unique identifier for each Consolidation Container used to

consolidate Drums of Used 106 Solvent at such HCC Waste Screening Facility;

ii.     for each Consolidation Container used to consolidate the contents

of Used 106 Solvent Drums, the date on which HCC measured the water content

of such Consolidation Container pursuant to the requirements of Paragraph 64,

below; and

iii.    for each Consolidation Container of Used 106 Solvent that

contains more than 10 percent water by volume:

(1)     the date HCC shipped the Consolidation Container

from the HCC Waste Screening Facility and the identity of the recipient of

such shipment; and

(2)     in each case where a recipient identified pursuant to

Subparagraph 61.b.iii(1) is a facility authorized to treat, store, or dispose

of hazardous waste, the hazardous waste manifest tracking number, and

the location of the facility to which such Consolidation Container was

shipped.

### iii. Screening of Used 106 Solvent Not Identified as Hazardous Waste

62. At each HCC Waste Screening Facility, HCC shall consolidate the contents of all Re-Use Solvent Drums. HCC shall consolidate Re-Use Solvent Drums only in Consolidation Containers.

63. HCC may not place Re-Use Solvent in tanks at any HCC Waste Screening Facility.

64. At each HCC Waste Screening Facility, HCC shall measure and record the final water content of each Consolidation Container of Re-Use Solvent after the last addition of Re-Use Solvent to such Consolidation Container as provided below in this Paragraph.

    a. Within 30 days after the Effective Date of the Consent Decree, HCC shall submit to Plaintiffs for approval a plan describing the methodology and procedures that HCC will use to determine the final water content of Re-Use Solvent in each Consolidation Container used by HCC to consolidate Re-Use Solvent. The plan shall describe the methods used to calculate the total volume of Re-Use Solvent present in each Consolidation Container and the percentage of water by volume present in such Re-Use Solvent, taking into account the dimensions and shape of the particular Consolidation Container. The plan may provide for using a folding ruler coated with water finding paste or another method acceptable to Plaintiffs as part of the process for determining the water content of Re-Use Solvent in Consolidation Containers.

    b. If the final water content of Re-Use Solvent in any Consolidation Container does not exceed 10 percent by volume, HCC may transport such solvent to any Re-Use Solvent Customer whose product specifications or acceptance criteria are consistent with the final water content measurement under this Subparagraph.

c.     If the final water content of Re-Use Solvent in any Consolidation Container exceeds 10 percent by volume, such solvent shall be considered Off-Spec Re-Use Solvent. In each instance in which a Consolidation Container contains Off-Spec Re-Use Solvent, HCC shall handle such Off-Spec Reuse Solvent in accordance with Paragraph 65, below.

65.     <u>Off-Spec Re-Use Solvent</u>. After determining that any Consolidation Container contains Off-Spec Re-Use Solvent:

a.     HCC shall, within 45 days of such determination, identify all End Users who have agreed to purchase some or all of such Off-Spec Re-use Solvent and have represented that they are able to legitimately use such solvent without reclaiming;

b.     HCC may transport such Off-Spec Re-Use Solvent without a hazardous waste manifest only to End Users identified in Subparagraph a, above;

c.     If no End User is identified for such Off-Spec Re-Use Solvent in accordance with Subparagraph a, above, HCC shall handle such Off-Spec Re-Use Solvent as hazardous waste, unless, HCC demonstrates that such Off-Spec Re-Use Solvent does not exhibit either the characteristic of ignitability or the characteristic of toxicity, as defined in the Relevant Hazardous Waste Management Program.

d.     If the contents of any Consolidation Container of Off-Spec Re-Use Solvent is deemed to be hazardous waste pursuant to Subparagraph c, above, HCC shall:

i.     promptly, but in no event more than one day after expiration of the time period specified in Subparagraph a, above, label the Consolidation Container as required by the Relevant Hazardous Waste Management Program; and

ii.    take appropriate steps to ensure that such Consolidation Container is Managed as provided in Subparagraphs 65.d.ii(1) and (2), below.

(1)    If any such Consolidation Container is located at an HCC Waste Screening Facility that does not have a permit to treat, store or dispose of hazardous waste, HCC shall, as expeditiously as practicable, but in no event longer than 10 days after expiration of the time period specified in Subparagraph 65.a, above, remove the Consolidation Container from the HCC Waste Screening Facility and transport such Consolidation Container in accordance with requirements of the Relevant Hazardous Waste Management Program to a facility authorized to treat, store or dispose of hazardous waste.

(2)    If any such Consolidation Container is located at or transported to an HCC Waste Screening Facility that has a permit to treat, store, or dispose of hazardous waste, HCC may Manage Off-Spec Re-Use Solvent at such HCC Waste Screening Facility, consistent with requirements of the Relevant Hazardous Waste Management Program and applicable permit requirements, including processing the Off-Spec Re-Use Solvent, by gravity separation, distillation or otherwise.

66.    <u>Gravity Separation During Transportation to End Users</u>. Any gravity separation that may occur in Consolidation Containers during the normal course of transportation of Re-Use Solvent or Off-Spec Re-Use Solvent to End Users shall not be considered processing of Re-Use Solvent within the meaning of this Consent Decree.

Consent Decree        **Page 43 of 91**

*U.S., LDEQ, & IN v. Heritage Crystal Clean, LLC*, Civil Action No. 1:22-cv-00303 (N.D. Il.)

**D.** **Interim Compliance Measures at HCC's 10th Street Facility**

67.    Beginning on the date this Consent Decree is lodged with the Court pending solicitation of public comment, HCC shall implement Appendix E (Interim Measures for HCC's 10th Street Facility), or subsequent revisions to Appendix E that have been agreed to in writing by the United States (after consultation with State Co-Plaintiffs) and HCC. Implementation of Appendix E shall continue until both of the following have occurred:

a.    A Final RCRA Permit from IDEM has gone into effect at the 10th St. Facility authorizing HCC to store and/or treat hazardous waste, including any Used 142 Solvent that exhibits any hazardous waste characteristic and any Used 106 Solvent identified as a hazardous waste; and

b.    HCC has completed construction or installation of any hazardous waste management units authorized by the Final RCRA Permit.

**E.** **Review by Plaintiffs of Deliverables**

68.    Plaintiffs Review and Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted to Plaintiffs for approval pursuant to this Consent Decree, EPA, after consultation with any Applicable State Co-Plaintiff, will in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

69.    If the submission is approved pursuant to Paragraph 68.a, above, HCC shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 68.b or c, HCC shall, upon written direction from EPA, after consultation with any Applicable State Co-Plaintiff, take all actions required by the approved plan, report, or other item that EPA, after consultation with

any Applicable State Co-Plaintiff, determines are technically severable from any disapproved portion.

70.     If the submission is disapproved in whole or in part pursuant to Paragraph 68.c or d, HCC shall, within 45 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, HCC shall proceed in accordance with the preceding Paragraph.

71.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with any Applicable State Co-Plaintiff, may again require HCC to correct any deficiencies in accordance with the preceding Paragraphs, may itself correct any deficiencies, or may finally disapprove the submission. If the resubmission is approved or corrected in whole or in part, HCC shall proceed in accordance with Paragraph 70.

72.     If HCC elects to invoke dispute resolution as set forth in Section XI (Dispute Resolution) concerning a decision made by EPA, after consultation with any Applicable State Co-Plaintiff, to disapprove, approve on specified conditions, or modify a deliverable, HCC shall do so by sending a Notice of Dispute in accordance with Paragraph 102 within 30 days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

73.     Any stipulated penalties applicable to the original submission, as provided in Section IX (Stipulated Penalties), accrue during the 45 day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of HCC's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

74.     Plaintiffs Review and Comment of Deliverables. For submissions subject to Plaintiffs review and comment, EPA, in consultation with any Applicable State Co-Plaintiff, may: (a) provide written comments on the submission, in whole or in part or (b) decline to comment. The absence of comments shall not be construed as approval.

### F.     Permits

75.     Permits. Where any compliance obligation under this Section requires HCC to obtain a federal, state, or local permit or approval, HCC shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. HCC may seek relief under the provisions of Section X (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if HCC has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VII.   THIRD-PARTY AUDIT

76.     HCC shall comply with the requirements for a Third-Party Audit as set forth in Appendix F.

## VIII.  REPORTING REQUIREMENTS

77.     HCC shall submit quarterly and annual reports to EPA and State Co-Plaintiffs at the addresses set forth in Section XV (Notices) of this Consent Decree, as described below in this Paragraph. Except with respect to information that HCC is required to report pursuant to Subparagraphs 77.a.ii (rejected 142 Solvent Drums), 77.a.vi (measures to ensure 106 Solvent meets criteria in Paragraph 52), 77.a.xii (Interim Measures), 77.a.xiii (non-compliance with Consent Decree),77.b.i (status of hazardous waste permit application), 77.b.iii (revisions to measures to ensure 106 Solvent meets criteria in Paragraph 52), and 77.b.iv (Third Party Audit), and information that HCC is required to provide upon Plaintiffs' request, HCC shall provide the

information required pursuant to this Paragraph 77 using spreadsheets consistent with the spreadsheets attached as Appendix G (Reporting Spreadsheets), or any subsequent revisions to such Appendices that have been agreed to in writing by the United States (after consultation with the State Co-Plaintiffs) and HCC. In any case where Appendix G provides for HCC to indicate a customer's "CC Generator ID" or EPA Generator ID, HCC shall, upon Plaintiffs' request, provide information regarding the customer's address.

      a.        Quarterly Reports. Within 30 days after the close of each three month sampling period referred to in Paragraph 34 after Plaintiffs' approval of the Sampling and Analysis Plan referred to in Paragraph 30, until termination of this Decree pursuant to Section XIX (Termination), HCC shall submit to EPA and State Co-Plaintiffs a report for the preceding three month sampling period, that shall include:

      i.        All of the information specified in the Appendix G spreadsheet titled "Random Drum Sampling" with respect to random sampling and analysis of Used 142 Solvent Drums pursuant to Paragraphs 33-35. Upon Plaintiffs' request, HCC shall provide additional details related to the sampling and analysis results, including QA/QC and raw data.

      ii.        For each rejected Used 142 Solvent Drum, all information tracked by HCC pursuant to Paragraph 29.a.iii. Upon Plaintiffs' request, HCC shall provide the Customer name, address, and generator status.

      iii.        All of the information specified in the Appendix G spreadsheet titled "Consolidation Container Sampling" with respect to each Used 142 Solvent Consolidation Container sampled pursuant to Paragraphs 42-44. Upon Plaintiffs'

request, HCC shall provide additional details related to the sampling and analysis results, including QA/QC and raw data.

     iv.    All of the information specified in the Appendix G spreadsheet titled "142 Solvent Customer Sampling Under Paragraph 40."

     v.    All of the information specified in the Appendix G spreadsheet titled "142 Solvent Customer Sampling Pursuant to Paragraphs 49.c and 50."

     vi.    For the first quarterly report, a description of the measures HCC implemented to ensure Re-Use Solvent meets the requirements set forth in Paragraph 52.

     vii.    All information specified in the Appendix G spreadsheet titled "Rejected 106 Solvent Drums" with respect to each Used 106 Solvent Drum rejected by HCC.

     viii.    All information specified in the Appendix G spreadsheet titled "Re-Use Customer List."

     ix.    All information specified in the Appendix G spreadsheet titled "Off-Spec Customer List."

     x.    All information specified in the Appendix G spreadsheet titled "Consolidation Containers of Re-Use Solvent."

     xi.    All information specified in the Appendix G spreadsheet titled "Off-Spec Re-Use Solvent" with respect to each Consolidation Container of Used 106 Solvent that contains more than 10 percent water by volume. HCC shall provide End User's specifications for the use of Off Spec Re-Use Solvent upon Plaintiffs' request.

Consent Decree       Page 48 of 91

*U.S., LDEQ, & IN v. Heritage Crystal Clean, LLC*, Civil Action No. 1:22-cv-00303 (N.D. Il.)

xii. Reporting related to Interim Measures for HCC's 10th Street Facility:

(1) For the first Quarterly Report only, identify the tank systems subject to Paragraph 1.a of Appendix E;

(2) For the first Quarterly Report only, identify the areas where containers subject to Paragraph 1.b of Appendix E are stored. For subsequent Quarterly Reports, describe any changes to areas where such containers are stored;

(3) Identify any inspections required pursuant to Paragraph 1 of Appendix E that were not conducted; or not conducted in compliance with applicable requirements;

(4) Identify any instances in which records required to be kept by Paragraph 2 of Appendix E were not kept;

(5) A summary of problems observed during the inspections logged pursuant to Paragraph 2.c of Appendix E. In addition, a summary of all repairs or other remedial actions logged during the reporting period pursuant to Paragraph 2.d of Appendix E. Upon request from EPA or Indiana, HCC shall provide copies of all records maintained pursuant to Paragraph 2 of Appendix E; and

(6) For the first Quarterly Report only, identify any open vents subject to Paragraph 3 of Appendix E and the dates and method each vent was closed. For subsequent Quarterly Reports, verify that all open vents subject to Paragraph 3 of Appendix E remain closed.

xiii.    A description of any non-compliance with the requirements of this Consent Decree, including the duration and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the quarterly report is due, HCC shall so state in the report. HCC shall investigate the cause of the violation and shall then submit an amendment to the quarterly report, including a full explanation of the cause of the violation, within 30 days of the day HCC becomes aware of the cause of the violation. Nothing in this Subparagraph or the following Paragraph relieves HCC of its obligation to provide the notice required by Section X (Force Majeure).

b.    Annual Reports. Within 30 days after the end of the calendar year, until termination of this Decree pursuant to Section XIX (Termination), HCC shall submit to EPA and State Co-Plaintiffs an annual report for the preceding calendar year. If a quarterly report and annual report are due at the same time, the reports can be combined. The annual report shall include:

i.    A status update of the hazardous waste permit application submitted to IDEM for the 10th Street Facility pursuant to Paragraph 16. If the permit has been issued to HCC, then HCC shall provide an update relating to the construction or installation of any hazardous waste management units authorized by such permit.

ii.    All of the information specified in the Appendix G spreadsheet titled "New Customer Pre-Acceptance Sampling" and, as applicable, all information specified in the Appendix G spreadsheet titled "Supplemental Pre-

Acceptance Sampling." Upon Plaintiffs' request, HCC shall provide the sampling and analysis.

       iii.    A description of any revisions to the measures relating to Re-Use Solvent in Paragraph 52, corresponding dates, and an estimate of the water reduction achieved.

       iv.    Reporting related to the Third-Party Audit:

         (1)    A description of any Site Visits that have been conducted during the reporting period including the site visited and the date of the visit.; and

         (2)    The date of any submissions made during the reporting period by HCC pursuant to Paragraphs 3, 4, 7, 8, 9, or 20 of Appendix F (Third-party Audit at HCC Waste Screening Facilities).

78.    Whenever any violation of this Consent Decree or any other event affecting HCC's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, HCC shall notify EPA and the Applicable State Co-Plaintiff by telephone or by email as soon as possible, but no later than 24 hours after HCC first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

79.    Each report submitted by HCC under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate,

and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

80.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

81.     The reporting requirements of this Consent Decree do not relieve HCC of any reporting obligations required by a Relevant Hazardous Waste Management Program, or by any other federal, state, or local law, regulation, permit, or other requirement.

82.     Any information provided pursuant to this Consent Decree may be used by the United States or State Co-Plaintiffs in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.     STIPULATED PENALTIES

83.     HCC shall be liable for stipulated penalties to the United States and to the Applicable State Co-Plaintiffs for violations of this Consent Decree as specified, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

84.     Late Payment of Civil Penalties. If HCC fails to pay the civil penalties required to be paid under Section V (Civil Penalty) when due, HCC shall pay a stipulated penalty of $1,000 per day per plaintiff for each day that a payment to a Plaintiff is late for the first 10 days. Thereafter, HCC shall pay $3,000 per day for each day that a payment to a Plaintiff is late.

85. Compliance Milestones. The following stipulated penalties shall accrue for each violation of the requirements identified in Section VI (Compliance Requirements) of this Consent Decree:

a. Prohibition on Unpermitted Treatment, Storage or Disposal of Hazardous Waste.

| Violation | Stipulated Penalty | |
|---|---|---|
| Treating, storing, or disposing of any hazardous waste at any HCC Facility prior to obtaining a permit from a Relevant Hazardous Waste Management Program and complete construction or installation of hazardous waste management units in violation of Paragraph 14. | *Period of Noncompliance* | *Penalty Per Day Per Violation* |
| | Days 1-15 | $1,000 |
| | Days 16-30 | $1,500 |
| | Days 31 and beyond | $2,000 |
| Failure to timely address any identified deficiencies and provide responsive supplemental information to IDEM as required in Paragraph 16 or submitting a response to a notice of deficiency that is so deficient as to constitute a material breach of HCC's obligations under Paragraph 16. | *Period of Noncompliance* | *Penalty Per Day Per Violation* |
| | Days 1-15 | $250 |
| | Days 16-30 | $375 |
| | Days 31 and beyond | $500 |

b. Pre-Acceptance Screening, Transport, and Management of Used 142 Solvent.

| Violations | Stipulated Penalty |
|---|---|
| Accepting Used 142 Solvent from a New 142 Solvent Customer who has not completed a generator certification form as required by Paragraph 20.a. | *Penalties per Drum accepted from the Customer who has not completed the generator certification form:* |
| | $50 per Drum for Drums 1-10 |
| | $100 per Drum for each subsequent Drum |
| Accepting Drums of Used 142 Solvent from a | *Penalties per occurrence:* |

| Violations | Stipulated Penalty |
|---|---|
| New 142 Solvent Customer in violation of requirements of Paragraph 21. | $100 for the first instance in which HCC accepts Used 142 Solvent from a particular Customer in violation of Paragraph 21 |
| | $250 for the second instance in which HCC accepts Used 142 Solvent from such Customer in violation of Paragraph 21 |
| | $1000 for each additional instance in which HCC accepts Used 142 Solvent from such Customer in violation of Paragraph 21 |
| Acceptance of Drums of Used 142 Solvent from a New 142 Solvent Customer who is a large quantity generator or small quantity generator in violation of the requirements of Paragraph 21.b. | *Penalty per occurrence:* |
| | $250 for the first instance in which HCC accepts Used 142 Solvent from a particular Customer in violation of Paragraph 21.b, except that the penalty shall be reduced to $100 in any case where HCC demonstrates that it completed sampling and analysis of all improperly accepted Used 142 Solvent Drums before such Drums were consolidated with other Used 142 Solvent. |
| | $500 for the second instance in which HCC accepts Used 142 Solvent from such Customer in violation of Paragraph 21.b, except that the penalty shall be reduced to $250 in any case where HCC demonstrates that it completed sampling and analysis of all improperly accepted Used 142 Solvent Drums before such Drums were consolidated with other Used 142 Solvent. |
| | $2500 for each additional instance in which HCC accepts Used 142 Solvent from such Customer in violation of Paragraph 21.b, except that the penalty shall be reduced to $1,250 in any case where HCC demonstrates that it completed sampling and analysis of all improperly accepted Used 142 Solvent Drums before such Drums were consolidated with other Used 142 Solvent. |

c.      Acceptance and Transport of Used 142 Solvent.

| Violation | Stipulated Penalty |
|---|---|
| Acceptance of Used 142 Solvent after the deadline specified in Paragraph 23.c from a Customer who has not completed a Revised 142 Solvent Generator Certification Form. | *Penalties per Drum from the Customer who has not completed the Revised 142 Solvent Generator Certification Form:* |
| | $50 per Drum for Drums 1-10 |
| | $100 per Drum for each subsequent Drum |
| Acceptance of Used 142 Solvent from a Customer without completing the pre-acceptance screening as required by Paragraph 24.a. | *Penalties per quarterly reporting period:* |
| | $50 per Drum for Drums 1-10 |
| | $100 per Drum for each subsequent Drum |
| Consolidating the contents of any Used 142 Solvent Drums prior to delivering such Drums to an HCC Waste Screening Facility in violation of the requirements of Paragraph 26. | $100 for each instance in which HCC consolidated Used 142 Solvent into a container with a capacity of 10,000 gallons or less of Used 142 Solvent |
| | $500 for each instance in which HCC consolidated Used 142 Solvent into a container with a capacity greater than 10,000 gallons |

d.      Tracking Obligations for Used 142 Solvent and Used 106 Solvent

| Violation | Stipulated Penalty |
|---|---|
| Failure to establish and maintain systems for tracking the movement of Drums and Consolidation Containers as required by Paragraph 29.a. | *Penalties per day:* |
| | $250 per day for days 1-10 |
| | $500 per day for days 10 through 30 |
| | $1,000 per day for each subsequent day |
| Failure to track the movement of any Consolidation Containers of Used 142 Solvent Managed by HCC as required by Paragraph 29.b.iv. | $2500 per Consolidation Container |

| Violation | Stipulated Penalty |
|---|---|
| Failure to track the movement and disposition of any Consolidation Containers of Off-Spec Re-use Solvent handled by HCC as required by Paragraph 61.b.iii. | $2500 per Consolidation Container |

e.    Sampling and Analysis Plan for Used 142 Solvent

| Violation | Stipulated Penalty | |
|---|---|---|
| Failure to timely submit a Sampling and Analysis Plan to Plaintiffs as required by Paragraph 30. | *Period of Noncompliance* | *Penalty Per Day Per Violation* |
| | Days 1-15 | $500 |
| | Days 16-30 | $1000 |
| | Days 31 and beyond | $5000 |
| Failure to collect and analyze samples from a Used 142 Solvent Drum in accordance with the requirements of Subsection VI.B.v (Waste Screening Program–Used 142 Solvent Drums). | $3,500 per Drum | |
| For a Used 142 Solvent Drum that exhibits one or more hazardous waste characteristics, failure to handle the drum as required by Paragraph 39.b. | *Period of Noncompliance* | *Penalty Per Day Per Violation* |
| | Days 1-15 | $500 |
| | Days 16-30 | $1000 |
| | Days 31 and beyond | $2000 |
| When sampling of any Used 142 Solvent Drum indicates the contents of such Drum exhibit a hazardous waste characteristic, accepting subsequent Drums from the Customer who generated the sampled Drum in violation of the requirements of Paragraph 40. | $250 for the first instance in which HCC accepts Used 142 Solvent from a particular Customer in violation of Paragraph 40, except that the penalty shall be reduced to $150 in any case where HCC demonstrates that it completed sampling and analysis of all improperly accepted Used 142 Solvent Drums before such Drums were consolidated with other Used 142 Solvent. | |

| Violation | Stipulated Penalty | |
|---|---|---|
| | $500 for the second instance in which HCC accepts Used 142 Solvent from a particular Customer in violation of Paragraph 40, except that the penalty shall be reduced to $250 in any case where HCC demonstrates that it completed sampling and analysis of all improperly accepted Used 142 Solvent Drums before such Drums were consolidated with other Used 142 Solvent. | |
| | $2500 for each additional instance in which HCC accepts Used 142 Solvent from such Customer in violation of Paragraph 40, except that the penalty shall be reduced to $1,250 in any case where HCC demonstrates that it completed sampling and analysis of all improperly accepted Used 142 Solvent Drums before such Drums were consolidated with other Used 142 Solvent. | |
| Failure to consolidate the contents of all Used 142 Solvent Drums not identified as hazardous waste into Consolidation Containers as required by Paragraph 41. | Number of Drums not consolidated as required under Paragraph 41 | Penalties per Drum |
| | Drums 1-100 | $50 per Drum |
| | Drums 101-200 | 500 per Drum |
| | 201st Drum and subsequent | $750 per Drum |
| Failure to collect and analyze samples from a Used 142 Solvent Consolidation Container in accordance with the requirements of Subsection VI.B.vi (Waste Screening Program–Consolidation Containers). | $5,000 per Consolidation Container | |

| Violation | Stipulated Penalty |
|---|---|
| Failure to mark a Consolidation Container that exhibits one or more hazardous waste characteristics as required by Paragraph 48. | $100 per Consolidation Container if the Consolidation Container is properly marked within 5 days of the date contents of the Consolidation Container were required to be managed as hazardous waste and before the Consolidation Container is removed from the HCC Waste Screening Facility. |
| | $200 per Consolidation Container if the Consolidation Container is properly marked before the Consolidation Container is removed from the HCC Waste Screening Facility but more than 5 days after the contents of the Consolidation Container were required to be managed as hazardous waste. |
| | $750 per Consolidation Container if the Consolidation Container is not properly marked before the Consolidation Container is removed from the HCC Waste screening Facility. |

| Failure to remove and transport a Consolidation Container that exhibits one or more hazardous waste characteristics as required by Paragraph 48. | *Period of Noncompliance* | *Penalty Per Day Per Violation* |
|---|---|---|
| | Days 1-15 | $1000 |
| | Days 16-30 | $1500 |
| | Days 31 and beyond | $2000 |

| Violation | Stipulated Penalty |
|---|---|
| Failure to collect and analyze a sample of Used 142 Solvent Drums from a large quantity generator or small quantity generator of hazardous waste as required by Paragraph 49.c. | $750 per Customer |

f.     Management of Used 106 Solvent

| Violation | Stipulated Penalty |
|---|---|
| Processing Re-Use Solvent by gravity separation, any form of distillation, or any other method in violation of Paragraph 51.a. | $5000 per incident |

| Violation | Stipulated Penalty | |
|---|---|---|
| Failure to submit to Plaintiffs a list of End Users who are able to directly use or reuse Used 106 Solvent that contains more than 10 percent water by volume as required by Paragraph 54. | *Period of Noncompliance* | *Penalty Per Day* |
| | Days 1-15 | $50 |
| | Days 16-30 | $100 |
| | Days 31 and beyond | $500 |
| Acceptance of a Used 106 Solvent Drum from a Customer without completing the pre-acceptance screening as required by Paragraph 56. | $100 per Drum | |
| Consolidation of the contents of Re-Use Solvent Drums prior to delivering such Drums to a HCC Waste Screening Facility in violation of Paragraph 58. | $100 per Drum | |
| Failure to consolidate Re-Use Solvent Drums in a Consolidation Container as required by Paragraph 62. | $100 per Drum | |
| Placing Re-Use Solvent in tanks at any HCC Waste Screening Facility in violation of Paragraph 63. | *Period of Noncompliance* | *Penalty Per Day Per Violation* |
| | Day 1 and beyond | $500 |
| Failure to measure and record the final water content of each Consolidation Container of Re-Use Solvent as required by Paragraph 64. | $1000 per Consolidation Container | |
| Failure to mark a Consolidation Container containing Off-Spec Re-Use Solvent as required by Paragraph 65.d.i. | $100 per Consolidation Container if the Consolidation Container is properly marked within 5 days of the date contents of the Consolidation Container were required to be managed as hazardous waste and before the Consolidation Container is removed from the HCC Waste Screening Facility. | |

| Violation | Stipulated Penalty | |
|---|---|---|
| | $200 per Consolidation Container if the Consolidation Container is properly marked before the Consolidation Container is removed from the HCC Waste Screening Facility but more than 5 days after the contents of the Consolidation Container were required to be managed as hazardous waste. | |
| | $750 per Consolidation Container if the Consolidation Container is not properly marked before the Consolidation Container is removed from the HCC Waste screening Facility. | |
| Failure to remove and transport a Consolidation Container of hazardous Off-Spec Re-use Solvent as required by Paragraph 65.d.ii(1). | *Period of Noncompliance* | *Penalty Per Day Per Violation* |
| | Days 1-15 | $1000 |
| | Days 16-30 | $1500 |
| | Days 31 and beyond | $2000 |

g.     Interim Measures for HCC's 10th Street Facility set forth in Appendix E:

| Violation | Stipulated Penalty | |
|---|---|---|
| Failure to conduct a daily inspection in compliance with the requirements of Subparagraph 1.a of Appendix E. | $250 per inspection | |
| Failure to conduct a weekly inspection in compliance with the requirements of Subparagraph 1.b of Appendix E. | $250 per inspection | |
| Failure to comply with the recordkeeping requirements in Paragraph 2 of Appendix E. | $500 per inspection | |
| Failure to close any open vent in compliance with the requirements Paragraph 3 of | *Period of Noncompliance* | *Penalty Per Day Per Violation* |

| Violation | Stipulated Penalty | |
|---|---|---|
| Appendix E. | Days 1-15 | $250 per day |
| | Days 16-30 | $500 per day |
| | Days 31 and beyond | $1000 per day |

h.      Third-Party Audit:

| Violation | Stipulated Penalty | |
|---|---|---|
| Failure to ensure that the Auditor timely completes the Audit Report as required by Paragraph 1 of Appendix F (Third Party Audit at HCC Waste Screening Facilities). | *Period of Noncompliance* | *Penalty Per Day Per Violation* |
| | Days 1-15 | $50 per day |
| | Days 16-30 | $100 per day |
| | Days 31 and beyond | $500 per day |
| Failure to submit a response to the Audit Report as required by Paragraph 19 of Appendix F (Third-party Audit at HCC Waste Screening Facilities). | *Period of Noncompliance* | *Penalty Per Day Per Violation* |
| | Days 1-15 | $500 per day |
| | Days 16-30 | $750 per day |
| | Days 31 and beyond | $1000 per day |

86.     Reporting Requirements. The following stipulated penalties shall accrue per violation per day for each violation of the reporting requirements of Section VIII (Reporting Requirements) of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $300 | 1st through 15th day |
| $750 | 16th through 30th day |

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1000 | 31st day and beyond |

87. Transfer of Ownership. If HCC establishes HCC Waste Screening Facilities at alternate or additional locations without complying with the requirements of Paragraph 4.b, HCC shall be liable for a stipulated penalty of $5,000 per occurrence.

88. Except as provided in Subparagraphs 91.a and b below, stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

89. HCC shall pay any stipulated penalties to the United States and the Applicable State Co-Plaintiff within 30 days of a written demand by any Plaintiff. HCC shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the Applicable State Co-Plaintiff. If there is more than one Applicable State Co-Plaintiff for a particular stipulated penalty, then the 50 percent state share shall be paid in equal shares to each Applicable State Co-Plaintiff. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiffs.

90. The United States or a State Co-Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

91. Stipulated penalties shall continue to accrue as provided in Paragraph 88, during any dispute resolution, but need not be paid until the following:

    a. If the dispute is resolved by agreement of the Parties or by a decision of EPA or Applicable State Co-Plaintiff that is not appealed to the Court, HCC shall pay

accrued penalties determined to be owing, together with interest, to the United States or the Applicable State Co-Plaintiff within 30 days of the effective date of the agreement or the receipt of EPA's or the Applicable State Co-Plaintiff's decision or order.

b.      If the dispute is appealed to the Court and the United States or the Applicable State Co-Plaintiff prevails in whole or in part, HCC shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

c.      If any Party appeals the District Court's decision, HCC shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

92.     HCC shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 10 and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. HCC shall pay stipulated penalties owed to the Applicable State Co-Plaintiff in the manner set forth in Paragraph 12.

93.     If HCC fails to pay stipulated penalties according to the terms of this Consent Decree, HCC shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State Co-Plaintiff from seeking any remedy otherwise provided by law for HCC's failure to pay any stipulated penalties.

94.     The payment of penalties and interest, if any, shall not alter in any way HCC's obligation to complete the performance of the requirements of this Consent Decree.

95.     Non-Exclusivity of Remedy. Stipulated penalties are not the Plaintiffs' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the Plaintiffs expressly reserve the right to seek any other relief it deems appropriate for HCC's violation of this Decree or applicable law, including but not limited to an action against HCC for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## X.     FORCE MAJEURE

96.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of HCC, of any entity controlled by HCC, or of HCC's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite HCC's best efforts to fulfill the obligation. The requirement that HCC exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include HCC's financial inability to perform any obligation under this Consent Decree.

97.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, HCC shall provide notice by telephone or by email to EPA and any Applicable State Co-Plaintiff within 72 hours of when HCC first knew that the event might cause a delay to the addresses provided in Section XV of this Consent Decree (Notices). Within seven days thereafter, HCC

shall provide in writing to EPA and the Applicable State Co-Plaintiff an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; HCC's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of HCC, such event may cause or contribute to an endangerment to public health, welfare or the environment. HCC shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude HCC from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. HCC shall be deemed to know of any circumstance of which HCC, any entity controlled by HCC, or HCC's contractors knew or should have known.

98.     If EPA, after a reasonable opportunity for review and comment by the Applicable State Co-Plaintiff, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the Applicable State Co-Plaintiff, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify HCC in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

99.     If EPA, after a reasonable opportunity for review and comment by the Applicable State Co-Plaintiff, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify HCC in writing of its decision.

100.     If HCC elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, HCC shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that HCC complied with the requirements of Paragraphs 96 and 97. If HCC carries this burden, the delay at issue shall be deemed not to be a violation by HCC of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI.    DISPUTE RESOLUTION

101.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. HCC's failure to seek resolution of a dispute under this Section shall preclude HCC from raising any such issue as a defense to an action by the United States or an Applicable State Co-Plaintiff to enforce any obligation of HCC arising under this Decree.

102.     Informal Dispute Resolution. Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when HCC sends DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by

written agreement. As part of the informal dispute resolution process, the Parties may by mutual

agreement retain the services of a mediator to assist in resolving a dispute. If the Parties cannot

resolve a dispute by informal negotiations, then the position advanced by the United States, after

consultation with any Applicable State Co-Plaintiff, shall be considered binding unless, within

30 days after the conclusion of the informal negotiation period, HCC invokes formal dispute

resolution procedures as set forth below.

103.    Formal Dispute Resolution. HCC shall invoke formal dispute resolution

procedures, within the time period provided in the preceding Paragraph, by sending DOJ and

EPA a written Statement of Position regarding the matter in dispute. The Statement of Position

shall include, but need not be limited to, any factual data, analysis, or opinion supporting HCC's

position and any supporting documentation relied upon by HCC.

104.    The United States, after consultation with any Applicable State Co-Plaintiff, will

send HCC its Statement of Position within 45 days of receipt of HCC's Statement of Position.

The United States' Statement of Position shall include, but need not be limited to, any factual

data, analysis, or opinion supporting that position and any supporting documentation relied upon

by the United States. The United States' Statement of Position is binding on HCC, unless HCC

files a motion for judicial review of the dispute in accordance with the following Paragraph.

105.    Judicial Dispute Resolution. HCC may seek judicial review of the dispute by

filing with the Court and serving on the United States a motion requesting judicial resolution of

the dispute. The motion (a) must be filed within ten days of receipt of the United States'

Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised

in informal dispute resolution pursuant to Paragraph 102, unless the Plaintiffs raise a new issue

of law or fact in the Statement of Position; (c) shall contain a written statement of HCC's

position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

106. The United States, after consultation with any Applicable State Co-Plaintiff, shall respond to HCC's motion within the time period allowed by the Local Rules of this Court. HCC may file a reply memorandum, to the extent permitted by the Local Rules.

107. Standard of Review

a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 103 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, HCC shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 105, HCC shall bear the burden of demonstrating that its position complies with and better furthers the objectives of this Consent Decree.

108. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of HCC under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to

the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 91. If HCC does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII. INFORMATION COLLECTION AND RETENTION

109.    The United States, any Applicable State Co-Plaintiff, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any HCC Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.    monitor the progress of activities required under this Consent Decree;

      b.    verify any data or information submitted to the United States or the Applicable State Co-Plaintiff in accordance with the terms of this Consent Decree;

      c.    obtain samples and, upon request, splits of any samples taken by HCC or its representatives, contractors, or consultants;

      d.    obtain documentary evidence, including photographs and similar data; and

      e.    assess HCC's compliance with this Consent Decree.

110.    Upon request, HCC shall provide EPA and the Applicable State Co-Plaintiff, or their authorized representatives splits of any samples taken by HCC. Upon request, EPA and the Applicable State Co-Plaintiff shall provide HCC splits of any samples taken by EPA or the Applicable State Co-Plaintiff.

111.    Until five years after the termination of this Consent Decree, HCC shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its

contractors' or agents' possession or control, and that relate in any manner to HCC's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the Applicable State Co-plaintiff, HCC shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

112.     At the conclusion of the information-retention period provided in the preceding Paragraph, HCC shall notify the United States and the Applicable State Co-Plaintiff at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the Applicable State Co-Plaintiff, HCC shall deliver any such documents, records, or other information to EPA or the Applicable State Co-Plaintiff. HCC may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If HCC asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by HCC. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

113.     HCC may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that HCC seeks to protect as CBI, HCC shall follow the procedures set forth in

40 C.F.R. Part 2. To assert that records, data or other information required to be submitted to LDEQ is entitled to be protected as confidential, HCC shall follow the law and procedures as set forth in the applicable provisions of La. R.S. 30:2030; La. R.S. 2074.D; and LAC 33:I. Chapter 5. To assert that records, data, or other information required to be submitted to Indiana is entitled to be protected as confidential, HCC shall follow the law and procedures set forth under 329 IAC 6.1.

114.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the Applicable State Co-Plaintiff pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of HCC to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

115.    This Consent Decree resolves the civil claims of the United States and the State Co-Plaintiffs for the violations alleged in the Complaint filed in this action through the date of lodging.

116.    The United States and the State Co-Plaintiffs reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States or the State Co-Plaintiffs to obtain penalties or injunctive relief under RCRA or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 115. The United States and the State Co-Plaintiffs further reserve all legal and equitable remedies to address any conditions if there is or may be an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, HCC Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

117.     In any subsequent administrative or judicial proceeding initiated by the United States and/or the State Co-Plaintiffs for injunctive relief, civil penalties, other appropriate relief relating to an HCC Facility, HCC shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States and/or the State Co-Plaintiffs in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 115.

118.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. HCC is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and HCC's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State Co-Plaintiffs do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that HCC's compliance with any aspect of this Consent Decree will result in compliance with provisions of a Relevant Hazardous Waste Program or with any other provisions of federal, State, or local laws, regulations, or permits.

119.     This Consent Decree does not limit or affect the rights of HCC or of the United States or the State Co-Plaintiffs against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against HCC, except as otherwise provided by law.

120.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV. COSTS

121.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and any Applicable State Co-Plaintiffs shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by HCC.

## XV. NOTICES

122.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, with a preference for email, addressed as follows:

| | |
|---|---|
| As to DOJ by email (preferred): | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-7-1-11889 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, DC 20044-7611<br>Re: DJ # 90-7-1-11889 |

As to EPA by email (preferred):

**HQ**: Kimberly Chavez (Chavez.Kimberly@epa.gov)

**Region 2**: Derval Thomas (Thomas.Derval@epa.gov)

**Region 4**: Alan Newman (Newman.Alan@epa.gov)

**Region 5**: Gracie Scambiatterra (she/her/hers) (scambiatterra.graciela@epa.gov)

**Region 6**: William Mansfield (Mansfield.William@epa.gov)

**Region 8**: Ms. Jacquelyn Vega (Vega.Jackie@epa.gov)

| | |
|---|---|
| As to EPA by mail: | **HQ**: Kimberly Chavez<br>Waste Enforcement Branch<br>Office of Civil Enforcement<br>1200 Pennsylvania Avenue, N.W.<br>Washington, DC 20460<br>(202) 564-4298 |

**Region 2**: Derval Thomas
Section Manager
US EPA Region 2
290 Broadway–21st Floor
New York, NY 10007-1866
(212) 637-3577

**Region 4**: Alan Newman
RCRA Enforcement Section
Enforcement and Compliance Assurance Division
Environmental Protection Agency Region 4
61 Forsyth Street
Atlanta, GA 30303
(404) 562-8589

**Region 5**: Gracie Scambiatterra (she/her/hers)
Supervisor, ECAD/LECAB CS1
U.S. Environmental Protection Agency, Region 5
77 W. Jackson Blvd.
Chicago, IL 60604
(312) 353-5103

**Region 6**: William Mansfield
Waste Enforcement Branch
Enforcement and Compliance Assurance Division
EPA Region 6
1201 Elm St., Suite 500 (ECDSR)
Dallas, TX 75270
(214) 665-8321

**Region 8**: Jacquelyn Vega
EPA Region 8, ECAD-ROEB
1595 Wynkoop Street
Denver, CO 80202-1129
(303) 312-6681

As to LDEQ by email (preferred):    deqenforcement@LA.GOV
RE: Heritage Crystal Clean (AI # 11270 & 146557)

As to LDEQ by mail:    Administrator
Enforcement Division
Office of Environmental Compliance
Louisiana Department of Environmental Quality
P.O. Box 4312
Baton Rouge, LA 70821-4312
(225) 219-3710
RE: Heritage Crystal Clean (AI # 11270 & 146557)

As to Indiana by mail:                    Lori Freeman
                                          Chief, Compliance Branch
                                          Office of Land Quality
                                          Indiana Department of Environmental Management
                                          100 N. Senate Ave., IGCN 1101
                                          Indianapolis, IN 46204
                                          (317) 232-8603

                                          Sarah Sharpe
                                          Attorney
                                          Office of Legal Counsel
                                          Indiana Department of Environmental Management
                                          100 N. Senate Ave., IGCN 1307
                                          Indianapolis, IN 46204
                                          (317) 232-8603

As to HCC by email (preferred):           Brian Recatto
                                          Brian.Recatto@crystal-clean.com

                                          Anita Decina
                                          Anita.decina@crystal-clean.com

As to HCC by mail:                        Brian Recatto
                                          President & CEO
                                          Heritage-Crystal Clean, LLC
                                          2000 Center Dr. Suite East C300
                                          Hoffman Estates, IL 60192
                                          (877) 938-7948

                                          Anita Decina
                                          Vice President
                                          Operational, Safety & Environmental Excellence
                                          2000 Center Drive, Suite East C300
                                          Hoffman Estates, IL 60192
                                          (847) 783-5924

                                          CT Corporation System (Chicago)
                                          208 S. La Salle St., Suite 814
                                          Chicago, IL 60604
                                          re: Heritage Crystal-Clean, LLC

123.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

124.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.  EFFECTIVE DATE

125.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that HCC hereby agrees that it shall be bound to implement the Interim Measures identified in Subsection VI.D upon the date of lodging. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII.  RETENTION OF JURISDICTION

126.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. MODIFICATION

127.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

128.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however, that, instead of the burden of proof

provided by Paragraph 107, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Fed. R. Civ. P. 60(b).

## XIX. TERMINATION

129.     HCC may serve upon Plaintiffs a Request for Termination when the applicable conditions precedent have been met:

      a.     If a Final RCRA Permit has been issued for the 10th Street Facility, the conditions precedent are:

            i.     HCC has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree;

            ii.     HCC has fully implemented the requirements of Section VII (Third-Party Audit) and submitted all reports required by Section VIII (Reporting Requirements);

            iii.     At least three years have elapsed since the Effective Date; and

            iv.     For a period of 12 continuous months prior to the request for termination, HCC has maintained satisfactory compliance with this Consent Decree;

      b.     If a Final RCRA Permit has not been issued for the 10th Street Facility, the conditions precedent are:

            i.     HCC has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree;

            ii.     HCC has fully implemented the requirements of Section VII (Third-Party Audit) and submitted all reports required by Section VIII (Reporting Requirements);

            iii.     At least five years have elapsed since the Effective Date; and

      iv.     For a period of 12 continuous months prior to the request for termination, HCC has maintained satisfactory compliance with this Consent Decree;

The Request for Termination shall describe how each of the conditions precedent have been met and include all necessary supporting documentation.

130.    Following receipt by Plaintiffs of HCC's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether HCC has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with the State Co-Plaintiffs, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

131.    If the United States, after consultation with the State Co-Plaintiffs, does not agree that the Decree may be terminated, HCC may invoke dispute resolution under Section XI (Dispute Resolution). However, HCC shall not seek dispute resolution of any dispute regarding termination until 90 days after service of its Request for Termination.

## XX.  PUBLIC PARTICIPATION

132.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States, after consultation with the Indiana, reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. HCC consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified HCC in writing that it no longer supports entry of the Decree.

Consent Decree          Page 78 of 91

*U.S., LDEQ, & IN v. Heritage Crystal Clean, LLC*, Civil Action No. 1:22-cv-00303 (N.D. Il.)

133.     The Parties agree and acknowledge that final approval by LDEQ and entry of this Consent Decree is subject to the requirements of La. R.S. 30:2050.7, which provides for public notice in the official journal in which the Shreveport Hub is located, an opportunity for public comment for 45 days, consideration of any comments, and concurrence by the State Attorney General. Evidence of final approval of this Consent Decree by LDEQ shall be LDEQ's execution of a Motion to Enter the Consent Decree, and LDEQ reserves the right to withdraw or withhold consent based on information provided during the public comment period or if the State Attorney General raises objections. In the event public comments raise issues over the content or terms of the Consent Decree or if the State Attorney General raises objections, the LDEQ may withdraw from this Consent Decree and will not join in the filing of a Motion to Enter the Consent Decree. This Paragraph does not create any rights exercisable by HCC.

## XXI.  SIGNATORIES/SERVICE

134.     The undersigned representative of HCC, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice (or his or her designee), and the undersigned representatives of the State Co-Plaintiffs each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

135.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. HCC agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Fed. R. Civ. P. and any applicable Local Rules of this Court including, but not limited to, service of a summons. HCC need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII. INTEGRATION

136.    This Consent Decree, including its Appendices and any deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the subject matter of the Decree herein.

## XXIII. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION

137.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of the obligations set forth in Section II (Applicability), Paragraph 5; Section VI (Compliance Requirements), Paragraphs 14–69 and 75, and related Appendices A (Procedures for Pre-Acceptance Screening of Used 142 Solvent and Used 106 Solvent), B (Educational Materials), C (Revised 142 Solvent Generator Certification Form), D (Solvent Parts Cleaner Waste Determination and Generator Status Worksheet for New 142 Solvent Customers who are LQGs or SQGs and All 142 Solvent Customers whose Used 142 Solvent Tested Hazardous), and E (Interim Measures for HCC's 10th Street Facility); Section VIII (Reporting Requirements), Paragraphs 77, 79, and 80 and related Appendix G (Reporting Spreadsheets); Section VII (Third-Party Audit), Paragraph 76, and related Appendix F (Third-Party Audit at HCC Waste Screening Facilities); and Section XII (Information Collection and Retention), Paragraphs 109–112, is restitution or required to come into compliance with law.

## XXIV. HEADINGS

138.    Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXV. FINAL JUDGMENT

139.    Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States, State Co-Plaintiffs,

and HCC.

## XXVI. APPENDICES

140.    The following Appendices are attached to and part of this Consent Decree:

| Appendix | Description |
|----------|-------------|
| A | Procedures for Pre-Acceptance Screening of Used 142 Solvent and Used 106 Solvent |
| B | Educational Materials |
| C | Revised 142 Solvent Generator Certification Form |
| D | Solvent Parts Cleaner Waste Determination and Generator Status Worksheet for New 142 Solvent Customers who are LQGs or SQGs and All 142 Solvent Customers whose Used 142 Solvent Tested Hazardous |
| E | Interim Measures for HCC's 10th Street Facility |
| F | Third-Party Audit at HCC Waste Screening Facilities |
| G | Reporting Spreadsheets |

Dated and entered this _____16th_____ day of ____May____, 202_4_.


_____
HONORABLE SUNIL R. HARJANI
United States District Judge

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States, et al. v. Heritage-Crystal Clean, LLC</u>, Civil Action No. 1:22-cv-00303, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


        /s Michael T. Donnellan
MICHAEL T. DONNELLAN
    Senior Attorney
STEVEN J. WILLEY
    Senior Counsel
LAURA K. WELLES
    Trial Attorney by Special Appointment
LAURA F. SMYTHE
    Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Phone: (202) 514-4226 | (202) 514-2807 | (202) 532-5556 |
        (202) 514-1113
Email: Michael.Donnellan@usdoj.gov |
        Steven.Willey@usdoj.gov |
        Laura.Welles@usdoj.gov |
        Laura.Smythe@usdoj.gov


MORRIS PASQUAL
Acting United States Attorney
Northern District of Illinois


        /s Kurt Lindland
KURT LINDLAND
Assistant United States Attorney
Northern District of Illinois
U.S. Attorney's Office
219 South Dearborn Street, 5th Floor
Chicago, IL 60604
Phone: (312) 353-4163
Email: Kurt.Lindland@usdoj.gov

WE HEREBY CONSENT to the entry of the Consent Decree in United States, et al. v. Heritage-Crystal Clean, LLC, Civil Action No. 1:22-cv-00303, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

DAVID
UHLMANN

Digitally signed by DAVID
UHLMANN
Date: 2023.11.17
15:18:52 -05'00'

_____

DAVID M. UHLMANN
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

ROSEMARIE
KELLEY

Digitally signed by
ROSEMARIE KELLEY
Date: 2023.11.17
17:03:04 -05'00'

_____

ROSEMARIE A. KELLEY
Director, Office of Civil Enforcement
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States, et al. v. Heritage-Crystal Clean, LLC</u>, Civil Action No. 1:22-cv-00303, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 3

ADAM ORTIZ

Digitally signed by ADAM ORTIZ
Date: 2023.11.08 14:23:29 -05'00'

ADAM ORTIZ
Regional Administrator
U.S. Environmental Protection Agency, Region 3
1600 JFK BLVD
Philadelphia, PA 19103

Consent Decree       Page 84 of 91

*U.S., LDEQ, & IN v. Heritage Crystal Clean, LLC*, Civil Action No. 1:22-cv-00303 (N.D. Il.)

WE HEREBY CONSENT to the entry of the Consent Decree in United States, et al. v. Heritage-Crystal Clean, LLC, Civil Action No. 1:22-cv-00303, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 4

Leif Palmer
Digitally signed by Leif Palmer
Date: 2023.11.14 20:13:05
-05'00'

LEIF PALMER
Regional Counsel
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, SW, 13th Floor
Atlanta, GA 30303

JOAN DURBIN
Digitally signed by JOAN DURBIN
Date: 2023.11.14 12:20:20 -05'00'

JOAN REDLEAF DURBIN
Senior Attorney
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, SW, 13th Floor
Atlanta, GA 30303

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States, et al. v.</u> <u>Heritage-Crystal Clean, LLC</u>, Civil Action No. 1:22-cv-00303, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 5

ROBERT KAPLAN

Digitally signed by ROBERT KAPLAN
Date: 2023.11.09 13:16:31 -06'00'

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 W. Jackson Blvd.
Chicago, IL 60604

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States, et al. v. Heritage-Crystal Clean, LLC,</u> Civil Action No. 1:22-cv-00303, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 6

*Patricia Welton*
_____
PATRICIA WELTON
Acting Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500
Dallas, TX 75270-2102

*Cheryl T. Seager*
_____
CHERYL T. SEAGER
Director
Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500
Dallas, TX 75270-2102

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States, et al. v. Heritage-Crystal Clean, LLC</u>, Civil Action No. 1:22-cv-00303, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 8

KATHLEEN BECKER
Digitally signed by KATHLEEN BECKER
Date: 2023.11.09 10:35:06 -07'00'

KC BECKER
Regional Administrator
U.S. Environmental Protection Agency, Region 8

KENNETH SCHEFSKI
Digitally signed by KENNETH SCHEFSKI
Date: 2023.11.07 13:43:26 -07'00'

KENNETH SCHEFSKI
Regional Counsel
U.S. Environmental Protection Agency, Region 8

SUZANNE BOHAN
Digitally signed by SUZANNE BOHAN
Date: 2023.11.08 08:48:53 -07'00'

SUZANNE J. BOHAN
Director
Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency, Region 8

CHARLES FIGUR
Digitally signed by CHARLES FIGUR
Date: 2023.11.03 15:41:13 -06'00'

CHARLES L. FIGUR
Senior Assistant Regional Counsel
Legal Enforcement Branch
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 8

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States, et al. v. Heritage-Crystal Clean, LLC</u>, Civil Action No. 1:22-cv-00303, subject to the public notice and comment requirements of La. R.S. 30:2050.7. Final approval by LDEQ and entry of this Consent Decree is subject to the requirements of La. R.S. 30:2050.7, which provides for public notice in the official journal in which the Shreveport Hub is located, an opportunity for public comment for 45 days, consideration of any comments, and concurrence by the Louisiana Attorney General.

FOR THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY:

11/13/2023
Date

CELENA J. CAGE
Assistant Secretary
Office of Environmental Compliance
Louisiana Dept. of Environmental Quality

11/13/2023
Date

JAY GLORIOSO
Trial Attorney (LA Bar #28050)
MICHAEL DANIELS
Trial Attorney (LA Bar #20775)
Office of the Secretary
Legal Affairs Division
Louisiana Dept. of Environmental Quality
P.O. Box 4302
Baton Rouge, Louisiana 70821-4302
Phone: (318)-362-5443 | (225) 219-0301
Email: Jay.Glorioso@la.gov | mike.daniels@la.gov

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States, et al. v. Heritage-Crystal Clean, LLC</u>, Civil Action No. 1:22-cv-00303.

FOR THE STATE OF INDIANA ON BEHALF OF THE INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT:

Date: 11/2/23

BRIAN C. ROCKENSEUSS
Commissioner
Indiana Department of Environmental Management
100 North Senate Avenue
Indianapolis, IN 46204

11/17/23
Date

PATRICIA ORLOFF ERDMANN
Chief Counsel of Litigation
Office of the Indiana Attorney General Todd Rokita
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN  46204-2770

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States, et al. v.</u>
<u>Heritage-Crystal Clean</u>, LLC, Civil Action No. 1:22-cv-00303.

FOR HERITAGE-CRYSTAL CLEAN, LLC:

_____

Brian Recatto
President & CEO
Heritage-Crystal Clean, LLC
2000 Center Dr. Suite East C300
Hoffman Estates, IL 60192

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, AND THE STATE OF INDIANA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:22-cv-00303 Honorable Jorge L. Alonso |
| v. | ) ) | Honorable Susan E. Cox |
| HERITAGE-CRYSTAL CLEAN, LLC, | ) ) | |
| Defendant. | ) ) | |

**CONSENT DECREE**

*APPENDIX A*

*Procedures for Pre-Acceptance Screening of Used 142 Solvent and Used 106 Solvent Not Designated as Hazardous Waste*

## APPENDIX A

## PROCEDURES FOR PRE-ACCEPTANCE OF USED 106 AND 142 SOLVENT

**Background**

Crystal Clean reviews every generator for eligibility into the Nonhazardous Solvent Parts Cleaning Program. A person who generates a solid waste, as defined in 40 CFR § 261.2, must make an accurate determination as to whether that waste is a hazardous waste in order to ensure wastes are properly managed according to applicable RCRA regulations.

Prior to initiating parts washing service, the Crystal Clean Sales and Service Representative (SSR) reviews the generator certification form prepared by the potential customer to ensure that the generator understands the importance of properly documenting the nonhazardous status of their spent solvent. If a generator is unable to make this determination, Crystal Clean will not remove solvent from the generator location, and if the generator requests our assistance, a qualified Crystal Clean representative will assist the generator with sampling and analysis of the waste.

A key step in the prescreening process for all parts washer services is to ensure the solvent accepted is a Crystal Clean supplied solvent. When a generator owns their machine and selects Crystal Clean to service their equipment, before Crystal Clean accepts any solvent for recycling, any non-Crystal Clean provided solvent currently in the machine will not be accepted into the Reuse or Nonhazardous programs but must be individually profiled and will be managed as containerized waste for disposal. The example "Waste Stream Survey Form" (Attachment B) may be submitted by hard copy or electronically to the Crystal Clean Waste Approvals Department at our corporate headquarters. The waste stream survey will be reviewed by the Waste Approvals Department for completeness, accuracy, and disposal options.

**Waste Acceptance Process: Qualitative/Visual Analysis**

Prior to removing parts cleaner solvent from the generator's business, the SSR will inspect the equipment and the solvent for qualitative/visual criteria to help ensure the integrity of the solvent. Key components of these criteria include:

- **Quantity** - Crystal Clean SSRs are instructed to visually examine the used parts washer solvent when the machines are serviced, noting the quantity, odor, and appearance of the material. When the volume of parts cleaner solvent is more than approximately 10% greater than originally supplied, it will be assumed that material has been added to the solvent and the container will not be accepted and the generator questioned.

- **Odor** - SSRs must never make an effort to "sniff" the solvent. However, if in the normal course of servicing the customer, the odor of the solvent in the container is noticed to be different from that of parts cleaner solvent, the container will not be accepted, and the generator questioned.

- **Appearance** - Liquids in the containers which deviate from the appropriate color, or which contain substantial amounts of water will be set aside for sampling and possible analysis and waste profiling to determine its acceptability or alternative disposal.

The qualitative assessment for each of the criteria above, quantity, odor, and appearance, will be documented at the time of service in Crystal Clean's Environmental Services Application (ES APP).

If the generator fails to provide a valid explanation for unusual features of its waste stream (quantity, odor, and appearance), that is characteristic of spent parts cleaner solvent, then the material is left behind. If the generator requests Crystal Clean's assistance with disposal, Crystal Clean will assist the generator with proper disposal, including completing a waste stream survey for drum removal and/or sampling the waste for further testing if the generator requests HCC to make a proper waste determination.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, AND THE STATE OF INDIANA, | ) ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 1:22-cv-00303 |
| | ) | Honorable Jorge L. Alonso |
| v. | ) | Honorable Susan E. Cox |
| | ) | |
| HERITAGE-CRYSTAL CLEAN, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CONSENT DECREE**

APPENDIX B

*Educational Materials*

**KEEP YOUR PARTS WASHER SOLVENT NON-HAZARDOUS AND RECYCLABLE!**

Crystal Clean cares about protecting the environment. The purpose of this Factsheet is to make sure you are aware of the increased regulatory responsibilities – and potential environmental risks—if your parts washer solvent is improperly used.

Because spent parts washer solvent is often contaminated with oil, grease, degreasers and possibly metals like lead or chromium, there are environmental concerns associated with its disposal. Depending on the type and level of contaminants, spent parts washer solvent may be regulated as hazardous waste if the proper precautions and management practices are not taken.

No materials can be added to your parts washer solvent, especially other cleaning solvents (e.g., perchloroethylene) either directly or by pre-treating parts with other solvent degreasers (including aerosol sprays) prior to cleaning the parts in the parts washer. If any other organic solvents are used to help clean or pre-clean parts that are then washed in the parts washer the solvent can become contaminated and may become an EPA regulated hazardous waste. If this were to occur, the waste must be managed in accordance with the RCRA hazardous waste regulations and may also result in the requirement to register your generator status and acquire a RCRA ID.

Therefore, do not pour, spray, or mix materials such as the following into your parts washer:

- Gasoline
- Water
- Brake Cleaner
- Chlorinated Solvents/Degreasers

If found to be contaminated with these materials through Crystal Clean's new sampling program, your non-hazardous parts washer services will cease immediately and management of your solvent will impose additional regulatory requirements, as well as costs for sampling, testing and proper disposal.

Help us keep your parts washer solvent non-hazardous and recyclable!

If you have questions, please contact your Crystal Clean Sales & Service Rep. (or local environmental regulatory agency).





# Keep Your Costs Down & Your Solvent Non-Hazardous and Recyclable!

Crystal Clean's non-hazardous solvent program is a unique, environmentally friendly way to clean parts efficiently with **NO HAZARDOUS WASTE GENERATED**, but it is up to **YOU** to keep the solvent non-hazardous and recyclable.

  

**NO materials** can be added to your parts washer solvent, either directly or by pretreating parts. **Do not pour, spray, or mix materials** such as the following into your parts washer:

| | |
|:---:|:---:|
| **Gasoline** | **Brake Cleaner** |
| **Water** | **Chlorinated Solvents** |

Handling your solvent as a non-recyclable hazardous waste may result in additional regulatory requirements, as well as costs for sampling, testing, and disposal.

Help us keep your parts washer solvent non-hazardous and recyclable!

If you have questions, please contact your Crystal Clean Sales & Service Rep.

# Parts Cleaning Service

## WARNING: Read these precautions before operating

### WARNING:

Use only cleaning fluids especially formulated for parts cleaning use. Do not contaminate with fluids having a flash point under 140°F. Even small amounts of gasoline or brake cleaner will cause a hazardous condition.

Do not operate near open flame, sparks, or smoking materials. Do not add or change fluid while the machine is running. Weight of liquid in drum provides stability. Keep filled to proper level.

Make sure that fusible link and tank cover support arm are engaged when unit is operating. Fusible link and support arm must be connected with cover leaning forward so cover will close in case of fire. When not in use, keep cover closed.

Do not plug drain to fill tank as unit will be top heavy and could tip over.

### PARTS PLACEMENT:

Any single-point support system can be upset by the improper placement of parts in the tank.

- Place unit on level surface.
- Do not allow parts to overhang the side of tank.
- Place all parts flat on tank bottom.
- Place parts in center of tank - not on either end.



### FUSIBLE LINK SAFETY FEATURE:

Fusible link melts at 165°F causing cover to close in event of fire. For replacement of fusible link, order Part # 62297.



### USING THE UNIT:

Remove parts from the tank/sink once they are cleaned. No parts should remain in the tank/sink after use.

Do not add or mix any fluids, such as gasoline, solvents, or cleaners, into the parts cleaner. Even small amounts of added chemicals, including chemicals present in any products used to pretreat parts before parts are placed in the parts washer, can cause the material to be hazardous.

### CLEANING:

To maximize fluid life and increase efficiency of the unit, the unit should be cleaned regularly. It is recommended that the unit's metal mesh strainer located at the bottom center of the tank be removed and cleaned daily for optimum filtration of contaminants and lengthened fluid life.





IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, AND THE STATE OF INDIANA, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) | Civil Action No. 1:22-cv-00303 Honorable Jorge L. Alonso |
| v. | ) ) | Honorable Susan E. Cox |
| HERITAGE-CRYSTAL CLEAN, LLC, | ) ) |  |
| Defendant. | ) ) ) |  |

**CONSENT DECREE**

APPENDIX C

*Revised Generator Certification Form*

**CRYSTAL CLEAN, LLC**
# GENERATOR CERTIFICATION

| | |
|---|---|
| Generator Name _____ | Generator EPA ID# _____ |
| Street Address _____ | HCC Generator # _____ |
| City, State, Zip _____ | Work Order # _____ |
| Phone _____ | Date _____ |

**THIS FORM IS DEEMED PART OF THE SERVICE AGREEMENT ("AGREEMENT") BETWEEN CRYSTAL CLEAN, LLC ("CC") AND THE IDENTIFIED GENERATOR AND ALL TERMS, CONDITIONS AND CERTIFICATIONS CONTAINED IN THAT AGREEMENT ARE DEEMED A PART OF THIS FORM. GENERATOR UNDERSTANDS THAT HCC WILL RELY UPON THE ACCURACY OF THE INFORMATION SUBMITTED BELOW TO MANAGE THE GENERATOR'S MATERIAL IN ACCORDANCE WITH ALL APPLICABLE LAWS AND REGULATIONS.**

## GENERATOR STATUS

☐ **Non-Regulated Generator**
The Generator certifies that it does not generate hazardous waste (as defined at 40 CFR 261.20-.33) in any quantity and does not qualify as a Very Small Quantity Generator, Small Quantity Generator or Large Quantity Generator as those terms are defined at 40 CFR Part 262, subpart A.

☐ **Very Small Quantity Generator (VSQG)**
The Generator certifies that it qualifies as a Very Small Quantity Generator (40 CFR 262.14, including state counterparts) because it generates less than 100 kg/220 lbs. of hazardous waste including the characteristic wastes (D code) or listed non-acute wastes (F, K, and U codes), and less than one kg (or 2.2 lbs.) of acute listed hazardous waste (P codes) in a calendar month. The Generator also certifies that it accumulates no more than 1000 kg/2200 lbs. of characteristic waste, non-acute F, K or U-listed hazardous waste, and no more than one kg of P-listed acute hazardous waste on-site at any one time during a calendar month. The Generator will immediately inform HCC if it accumulates more than 1,000 kg of characteristic waste, F, K, or U-listed non-acute hazardous waste, or more than one kg of P-listed acute hazardous waste on-site at any time during a calendar month.

☐ **Small Quantity Generator (SQG)**
The Generator certifies that it qualifies as a Small Quantity Generator (40 CFR 262.15-.16) because it generates more than 100 kg/220 lbs. but less than 1000 kg/2200 lbs. of hazardous waste and less than one kg of P-listed acute hazardous waste in a calendar month.

☐ **Large Quantity Generator (LQG)**
The Generator certifies that it qualifies as a Large Quantity Generator (40 CFR 262.15 and 262.17) because it generates more than 1000 kg/2200 lbs. of non-acute hazardous waste per month or more than one kg of P-listed acute hazardous waste in a calendar month.

## PARTS CLEANER SERVICES/RECYCLING PROGRAMS

Generator certifies that any parts cleaner fluids tendered to HCC for pickup do not include waste generated by any other person or any other business operation and have not been mixed with (a) any hazardous waste under the Resource Conservation and Recovery Act ("RCRA"); (b) any polychlorinated biphenyl (PCBs); or (c) other materials regulated under the Toxic Substances Control Act ("TSCA"). Further, all constituents present in such fluids are contaminants resulting from, and incidental to, the normal use of the fluids as a degreaser or cleaner and any failure of these certifications to be true and accurate may result in the fluids being classified as hazardous waste subject to federal or state laws and regulations and ineligible for HCC's recycling program(s).

☐ **Non-Hazardous Parts Cleaner Program Certification**

Application: (check all that apply)
____ Plant Maintenance      ____ Automotive      ____ Industrial Parts Cleaning      ____ Other (must enter) _____

I certify that the used parts cleaning solvent generated at this location is not hazardous waste per 40 CFR Sections 261.20-35. This nonhazardous certification is based on:

☐ "Generator Knowledge" of the hazard characteristic of the used 142 Parts Washing Solvent in light of the materials or the processes used to generate the waste; OR

☐ Testing the used 142 Parts Washing Solvent in accordance with requirements of the hazardous waste management program applicable to this location

I certify that no other cleaning solvents (e.g., perchloroethylene) have been added to Parts Cleaning Solvent either directly or by pre-treating parts with any other solvent degreasers (including aerosol sprays) prior to cleaning the parts in the parts cleaner. I understand that if any other solvents are used to pre-clean parts that are then cleaned in the parts cleaner, the solvent may become a state and federally regulated hazardous waste.

☐ **Reuse Program Certification**
The Generator acknowledges and certifies that based on the information it has provided to HCC, the degreasing/cleaning fluids picked up by HCC qualify for HCC's Reuse Program and will be used as an ingredient in an industrial process to make a product.

☐ **Aqueous Program Certification**
The Generator acknowledges and certifies that based on the information it has provided to HCC, its waste materials qualify for HCC's Aqueous Program and understands that the degreasing/cleaning fluids may be managed as a non-hazardous waste or recycled as used oil.

| **USED OIL/VACUUM SERVICE** |
|---|
| ☐  **Used Oil/Vacuum Service**<br>The waste materials meet the definition of used oil in 40 CFR 279 ("oil that has been refined from crude oil, or any synthetic oil, that has been used and as a result of such use contaminated by physical or chemical impurities") and have not been mixed with materials, including hazardous waste, PCBs, or other materials regulated under TSCA, that would cause the used oil to be managed under a different regulatory program.  In addition, the materials provided to HCC have not been mixed with fuels or solvents in such amounts that would cause this material to be combustible (flash point of less than 200° F) per 49 CFR 173.120. |

**Generator agrees to immediately notify HCC of any facts that would result in a change to the truth, accuracy or completeness of the above Certification or any prior Certifications of the Generator. This Certification supersedes all prior Certifications on the waste material described herein. The person signing this Certification has knowledge of the Generator's facilities, administrative practices and operational procedures (or has directed the completion of such review by others) and based on such review, has the authority to make this true, accurate and complete Certification.**

_____     _____     _____
(Printed Name of Responsible and Authorized Party)          (Signature)                                        (Date)

Rev. 05/2021 Printed in USA                                                                                        FORM 20344

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, AND THE STATE OF INDIANA, | ) ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 1:22-cv-00303 |
| | ) | Honorable Jorge L. Alonso |
| v. | ) | Honorable Susan E. Cox |
| | ) | |
| HERITAGE-CRYSTAL CLEAN, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**CONSENT DECREE**

APPENDIX D

*Solvent Parts Cleaner Waste Determination and Generator Status Worksheet for*

*New 142 Solvent Customers who are LQGs or SQGs*

*and*

*All 142 Solvent Customers whose Used 142 Solvent Tested Hazardous*

**Appendix D**

**Solvent Parts Cleaner Waste Determination and Generator Status Worksheet for**

**New 142 Solvent Customers who are SQG or LQG**

**and**

**All 142 Solvent Customers whose Used 142 Solvent Tested Hazardous**

**Part I – Customer Information**

Company Name: _____

EPA Generator ID (if applicable): _____

Street Address, City, State: _____

Date: _____

**Part II – Customer Characterization of Used 142 Parts Washing Solvent**

Note:  Before Heritage-Crystal Clean, LLC accepts and manages your used 142 Parts Washing Solvent, you must certify whether your used 142 Parts Washing Solvent is hazardous waste or non-hazardous waste, by checking the applicable box(s) below.  You may base your certification on Generator Knowledge of the hazard characteristic of the used 142 Parts Washing Solvent or on testing of your used 142 Parts Washing Solvent, as described below.

Check all applicable box(s) in Part III.A or III.B below and sign and date this form.

> **Regulatory agencies may ask a generator to produce documentation to support a generator's nonhazardous waste determination.**

## A. Determination that parts cleaning solvent is not Hazardous Waste

1. ☐ **Used 142 Parts Washing Solvent generated at this location is Not Hazardous Waste** under the federal waste classification regulations contained in 40 CFR Sections 261.20-35.

   If you checked box 1, specify whether your certification is based on:

   **1.a** ☐ "Generator Knowledge" of the hazard characteristic of the used 142 Parts Washing Solvent in light of the materials or the processes used to generate the waste, or

   **1.b** ☐ Testing the used 142 Parts Washing Solvent in accordance with requirements of the hazardous waste management program applicable to this location

2. ☐ No other cleaning solvents (e.g., perchloroethylene) have been added into the 142 Parts Washing Solvent generated at this location either directly or by pre-treating parts with any other solvent degreasers (including aerosol sprays) prior to cleaning the parts in the parts washer.  I understand that if any other organic solvents are used to help clean or pre-clean parts that are then washed in the parts washer the solvent can become contaminated and would likely become an EPA regulated hazardous waste.

Appendix D-Consent Decree

Page 1 of 3

*U.S., LDEQ, & IN v. Heritage Crystal Clean, LLC*, Civil Action No. 1:22-cv-00303 (N.D. Il.)

**NOTE:**  If screening and/or sampling by the Accepting Recycling Facility indicates that the waste meets the definition of regulated hazardous waste, the waste must be managed in accordance with the RCRA hazardous waste regulations.  You will be required to fill out and sign a new waste profile, documenting the contamination of the used parts cleaning solvent with the applicable hazardous constituent.  This may also result in the requirement to register your generator status with RCRA ID.

## Waste determination that used parts cleaning solvent is Hazardous Waste

**3.** **Used parts cleaning solvent generated at this location is EPA RCRA Hazardous Waste based upon one of the below:**

    **3.a** ☐ Generator Knowledge that flammable solvents and/or non-flammable solvents (such as perchloroethylene) from aerosol spray cans of brake or carburetor cleaner is used to pre-clean parts prior to final cleaning in the parts washer or that such solvents otherwise are present in the used the solvent parts cleaner.  This waste may be regulated as EPA Waste Code: D001 and/or D039.

    **3.b** ☐ Testing the used 142 Parts Washing Solvent for waste characteristics at a laboratory

Used parts cleaning solvent generated at this location is an EPA regulated hazardous waste that has been characterized by either sampling/laboratory analysis or through Generator Knowledge to have these EPA waste codes (attach lab report if applicable)

| List applicable EPA Waste Codes: |
|---|

### Part III –  Hazardous Waste Generator Status

Do you generate any hazardous waste at this location?

**6.** ☐ Yes ☐ No

If you checked "Yes" in box 6 –

- Do you ever generate 100 kg (220 lbs) or more of hazardous waste at this location during any calendar month (include all hazardous waste)?

    ☐ Yes ☐ No

- Do you ever generate 1 kg (2.2 lbs) or more of acutely hazardous waste at this location during any calendar month?

    ☐ Yes ☐ No

- Do you ever accumulate more than 1000 kg (2200 lbs) of hazardous waste or more than 1 kg (2.2 lbs) of acutely hazardous waste at this location?

Appendix D-Consent Decree      Page 2 of 3

*U.S., LDEQ, & IN v. Heritage Crystal Clean, LLC*, Civil Action No. 1:22-cv-00303 (N.D. Il.)

☐ Yes          ☐ No

If you checked "No" in all boxes in 7.a – 7.c, you may qualify as a Very Small Quantity Generator or a Conditionally Exempt Small Quantity Generator of hazardous waste under the hazardous waste management program applicable to your location.  If you checked "Yes" to any of the boxes in 7.a – 7.c, you may qualify as either a Small Quantity Generator or Large Quantity Generator of hazardous waste under the hazardous waste management program applicable to your location.

| HAZARDOUS WASTE GENERATOR STATUS |
|---|

**Check one of the following:**

8.a  ☐  **Non-Regulated Generator**

This generator location does not generate hazardous waste in any quantity at this location and therefore does not currently qualify as Very Small Quantity Generator, Conditionally Exempt Small Quantity Generator, Small Quantity Generator or Large Quantity Generator as those terms are defined in the hazardous waste management program applicable to this location.

8.b  ☐  **Very Small Quantity Generator (VSQG) or Conditionally Exempt Small Quantity Generator (CESQG)**
Based on the amount of hazardous waste generated and/or accumulated at this location (as indicated in boxes 7.a – 7.c), this location qualifies as a Very Small Quantity Generator or Conditionally Exempt Small Quantity Generator within the meaning of the hazardous waste management program of this State.

8.c  ☐  **Small Quantity Generator (SQG) or Large Quantity Generator (LQG)**
Based on the amount of hazardous waste generated and/or accumulated at this location (as indicated in boxes 7.a – 7.c), the customer certifies that it currently qualifies as either a Small Quantity Generator or a Large Quantity Generator of hazardous waste within the meaning of the hazardous waste management program of this State.

Print Name/Title: _____

Signature: _____ Date: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, AND THE STATE OF INDIANA, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| HERITAGE-CRYSTAL CLEAN, LLC, | ) ) ) |
| Defendant. | ) ) |

Civil Action No. 1:22-cv-00303
Honorable Jorge L. Alonso
Honorable Susan E. Cox

**CONSENT DECREE**

APPENDIX E

*Interim Measures for HCC's 10th Street Facility*

**APPENDIX E**

**Interim Measures for HCC's 10th Street Facility**

1.      Pursuant to Paragraph 67 of the Consent Decree, HCC shall implement the following interim compliance measures:

      a.      Daily inspections of all tanks systems, including secondary containment, that contain Used 142 Solvent. Daily inspections of such tank systems, including the fixed roof and the secondary containment, shall include:

            i.      Inspecting all overfill controls to assure such controls are in proper working order;

            ii.      Examining and documenting any signs of corrosion/releases;

            iii.      Undertaking remedial action to address deterioration of ancillary equipment early enough to assure condition will not lead to releases;

            iv.      Looking for and documenting any gaps, cracks, or deterioration of secondary containment;

            v.      Determining and documenting whether any gaps, cracks, or deterioration of the secondary containment system may present a threat to the integrity of the secondary containment; and

            vi.      Initiating repair of gaps, cracks, or deterioration of secondary containment that may present a threat to its integrity as soon as possible but no longer than 72 hours following the determination.

      b.      At least weekly inspections of containers containing Used 142 Solvent and Used 106 Solvent, including areas where such containers are stored. Weekly inspections of such containers and storage areas shall include:

Appendix E-Consent Decree        Page 1 of 2

*U.S., LDEQ, & IN v. Heritage Crystal Clean, LLC*, Civil Action No. 1:22-cv-00303 (N.D. Il.)

i. Confirming that all containers are tightly closed if not actively being loaded or unloaded by an operator at the time of the inspection;

ii. Identifying any containers that are not in good condition (e.g., structural problems/severe rusting/bulging);

iii. Looking for and documenting any indications of releases;

iv. If a container is not in good condition, transferring waste to a container in good condition and cleaning up any released material; and

v. Confirming that spill response equipment is readily available within each container storage area.

2. Recordkeeping associated with the inspections conducted pursuant to Paragraph 1 shall be kept in a log on-site and include:

a. The date and time of the inspection;

b. The name of the inspector;

c. A notation of the observations made during the inspection; and

d. The date and nature of any repairs (e.g., attach associated work orders) or of remedial actions and the basis for any determination under Paragraph 1(a)(v) that a gap, crack, or deterioration does not threaten the integrity of secondary containment in a tank system.

3. HCC shall close any open vents associated with tank systems inspected in Subparagraph 1.a, above and keep all such vents closed.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, AND THE STATE OF INDIANA, )))))) Plaintiffs, )) v. )) HERITAGE-CRYSTAL CLEAN, LLC, )))) Defendant. ))) | Civil Action No. 1:22-cv-00303 Honorable Jorge L. Alonso Honorable Susan E. Cox |

**CONSENT DECREE**

APPENDIX F

*Third Party Audit at HCC Waste Screening Facilities*

**APPENDIX F**

**Third-party Audit at HCC Waste Screening Facilities**

**A.      Auditor Selection Procedures**

1.      HCC shall hire, at its expense, an independent third-party auditor ("Auditor") approved by the United States to conduct and complete a review and audit to evaluate the efficacy of HCC's Used 142 Solvent Program and Used 106 Solvent Program at each of HCC's Waste Screening Facilities ("Audit") and to prepare a report that includes the information in Paragraphs 14–17 of this Appendix ("Audit Report"). HCC shall ensure that the Auditor commences such Audit no sooner than 120 days and no later than 425 days after whichever of the following events occurs second in time:

a.      Plaintiffs' approval of a Sampling and Analysis Plan pursuant to Paragraph 30 of the Consent Decree; or

b.      Plaintiffs' approval of a plan describing the methodology and procedures that HCC will use to determine the final water content of Re-Use Solvent Pursuant to Paragraph 64 of the Consent Decree.

HCC shall ensure that an approved candidate is hired as an Auditor, that the Auditor completes the tasks described in Paragraphs 12–15 of this Appendix within 6 months of the date the Audit commences or such longer period of time as is agreed to in writing by the Parties and that the Auditor issues its Audit Report in accordance with the schedule specified in Paragraph 18 of this Appendix.

2.      HCC shall give the Auditor a copy of the following Sections of this Consent Decree:

•      All "Whereas" Paragraphs;

•      Section IV (Definitions);

- Section VI (Compliance Requirements);

- Section VII (Third Party Audit);

- Section VIII (Reporting Requirements); and

- All Consent Decree Appendices.

In addition, HCC shall provide the Auditor and its personnel with full access to all HCC Waste Screening Facilities, and provide or otherwise make available any necessary personnel, documents, and databases to perform all of the duties in Section B (Auditor Responsibilities) of this Appendix. For purposes of this Appendix, the term "personnel" shall mean all persons, including subcontractors, who manage, conduct, or otherwise participate or are proposed to manage, conduct, or otherwise participate in the Audit.

3. <u>Hiring Process for Auditor</u>. If the United States approves an Auditor proposed by HCC before the Effective Date, then the approved Auditor shall serve as Auditor. Otherwise, within 60 days of the Effective Date, HCC shall submit to the United States a list of names and qualifications (e.g., resume, biographical information, and Disclosure Statement) of at least one and up to three candidates for Auditor and certify that such candidates meet the following conditions:

a. The resumes and other information provided by the candidate to HCC document that the candidate and its personnel have experience conducting environmental compliance audits of industrial facilities, and demonstrated expertise and competence (through experience, education, and/or training) in RCRA, including waste characterization, sampling, and testing methodologies.

b. The candidate and its personnel have not been employed by HCC, have not conducted research and/or development for HCC, and have not provided advisory services of any kind (including but not limited to design, construction, financial,

engineering, hazardous waste management, legal, or consulting services) to HCC within the last one year. In addition, HCC must describe any business relationships it had with the candidate, its personnel, and the candidate's firm during the prior three years. Information provided by HCC should include:

- The duration of the work for HCC, and

- The nature and extent of the services provided to HCC.

c.     The candidate, its personnel, and the candidate's firm have not been retained by HCC to develop, or assist in developing in any way, the Used 142 Solvent Program and Used 106 Solvent Program.

4.     Each candidate for Auditor proposed by HCC for consideration must execute the Disclosure Statement attached hereto as Exhibit A to this Appendix.

5.     HCC shall not employ the Auditor or its personnel who managed, conducted, or otherwise participated in the Audit to provide any other commercial, business, or voluntary services to HCC during the Audit process and for a period of at least one year following the Auditor's submission of its final Audit Report. Notwithstanding this provision, HCC can employ other members of the Auditor's firm or business who were not involved in the audit.

6.     The United States, after consultation with State Co-Plaintiffs, will notify HCC in writing whether it approves one or more of HCC proposed candidates for Auditor. Within 30 days of the United States' approval, HCC shall retain one of the approved candidates to serve as the Auditor. HCC shall enter into a written agreement with the Auditor that requires the Auditor to perform the duties specified in Section B of this Appendix in accordance with schedule specified in Paragraph 1 of this Appendix. HCC shall ensure that the Auditor performs the Audit in compliance with the written agreement.

7.      If the United States does not approve of any of HCC's candidates for Auditor, then HCC shall, within 45 days of receipt of the United States' written notification, submit to the United States for approval the names and qualification of at least one and up to two alternative candidates for Auditor that meet the qualifications of Paragraph 3 of this Appendix. If the United States does not approve either of the two alternative candidates for Auditor, HCC may invoke the dispute resolution procedures in Section XI (Dispute Resolution) of the Consent Decree.

8.      HCC shall provide the United States with a copy of HCC's written agreement with the Auditor within 10 days of the execution of the agreement.

9.      <u>Auditor Replacement Procedure</u>. If, after approval, either the United States or HCC independently determines that the approved Auditor cannot satisfactorily perform the Audit required by this Appendix, within 45 days of HCC's determination or receipt of the United States' notice of the same, HCC shall submit to the United States for approval the name and qualifications of at least one and up to two replacement candidates for Auditor that meet the qualifications set forth in Paragraph 3 above. If HCC and the United States do not agree on the need to select a replacement Auditor, HCC may invoke the dispute resolution procedures in Section XI (Dispute Resolution) of this Consent Decree.

10.     Within 60 days of the United States' final approval of the Auditor, the Auditor and its key personnel will have a kick-off meeting with HCC, EPA, and State Co-Plaintiffs to provide an overview of how the audit in Section B of this Appendix will be performed.

**B.      Auditor Responsibilities**

11.     The Auditor must comply with the procedures and requirements in this Section.

12.     The Auditor shall act independently to provide an objective and fair assessment of HCC's Used 142 Solvent Program and Used 106 Solvent Program at each HCC Waste Screening Facility.

13.     The Auditor shall review relevant information and conduct site visits as set forth below.

14.     Site Visits: The Auditor shall conduct one scheduled site visit at each of HCC's Waste Screening Facilities (hereinafter referred to as "Site Visit") to review relevant information, collect samples, and observe implementation of and evaluate HCC's Used 142 Solvent Program and Used 106 Solvent Program. Each Site Visit shall be scheduled on a day or days when the Auditor can conduct all required elements of the Site Visit. Each such Site Visit shall, at a minimum, include all of the following elements:

**Used 142 Solvent Program**

a.      For Used 142 Solvent Drums, the Auditor shall review and evaluate the following:

i.      HCC's sampling of Used 142 Solvent Drums and whether such sampling is consistent with the Sampling and Analysis Plan approved by Plaintiffs pursuant to Subsection VI.B.iv of the Consent Decree. The Auditor shall observe HCC sampling of at least one Drum of Used 142 Solvent;

ii.     HCC's system for selecting Used 142 Solvent Drums to be sampled each month as required by Subsection VI.B.v of the Consent Decree, with a focus on whether such system is random and does not exclude any category of Customers (e.g., Very Small Quantity Generators);

iii.    HCC's segregation and management of sampled Used 142 Solvent Drums; and

iv.     If HCC's sampling of any Used 142 Solvent Drum reveals that the Drum exhibits one or more hazardous waste characteristics, HCC's management of such sampled Drum, with a focus on whether the Drum was labeled, dated, and

shipped offsite within the time period provided in Paragraph 38 of the Consent Decree.

b.      For Used 142 Solvent Drums, the Auditor shall sample at least five such Drums that are selected based on the Auditor's discretion as follows:

i.      Collect at least five samples from Used 142 Solvent Drums;

ii.     Obtain splits of any samples of Used 142 Solvent Drums collected by HCC during the Site Visit; and

iii.    Analyze such samples and splits for the parameters in the Sampling and Analysis Plan approved by Plaintiffs pursuant to Paragraph 30 of the Consent Decree.

c.      For Used 142 Solvent Consolidation Containers, the Auditor shall review and evaluate the following:

i.      HCC's management of Used 142 Solvent Consolidation Containers in compliance with the requirements of Subsection VI.B.vi (Waste Screening Program – Consolidation Containers);

ii.     HCC's sampling of Used 142 Solvent Consolidation Containers and whether such sampling is consistent with the Sampling and Analysis Plan approved by Plaintiffs pursuant to Subsection VI.B.iv (Sampling and Analysis Plan) of the Consent Decree and the timing required by Paragraph 43 of the Consent Decree. The Auditor or its personnel shall observe HCC sampling of at least one Consolidation Container of Used 142 Solvent after the last addition of Re-Use Solvent to such Consolidation Container. HCC shall notify the Auditor regarding when HCC expects to sample a Consolidation Container pursuant to the

Consent Decree. If the Auditor or its personnel do not observe HCC's sampling of that Consolidation Container, then HCC will provide notice to the Auditor regarding subsequent opportunities to observe Consolidation Container sampling until such time as the Auditor has observed HCC's sampling;

   iii. If sampling of any Used 142 Solvent Consolidation Container reveals that the Consolidation Container exhibits one or more hazardous waste characteristics, HCC's management of such sampled Consolidation Container, with a focus on whether the Consolidation Container was labeled, dated, and shipped offsite as required by Paragraph 48 of the Consent Decree; and

   iv. For Used 142 Solvent Consolidation Containers, the Auditor or its personnel shall:

     (1) Obtain a split of the sample from the Used 142 Solvent Consolidation Container collected by HCC during the Site Visit; and

     (2) Analyze such split for the parameters in the Sampling and Analysis Plan approved by Plaintiffs pursuant to Paragraph 30 of the Consent Decree.

**Used 106 Solvent Program.**

   d. For Drums and Consolidation Containers of Used 106 Solvent, the Auditor shall review and evaluate the following:

   i. HCC's system for managing Used 106 Solvent, with a focus on whether HCC is processing Re-Use Solvent by gravity separation, any form of distillation, or any other method for any of the purposes listed in Paragraph 51.a of the Consent Decree.

   ii. HCC's system for managing Used 106 Solvent Drums, with a

focus on the decision making associated with each such Drum, including:

      (1)    Whether Drums are inspected for water content. If so, describe HCC's process for checking the water content;

      (2)    If Drums are inspected for water content, whether HCC handles Drums with high water content differently than Drums with low water content;

      (3)    Whether any Drums are not bulked into Used 106 Solvent Consolidation Containers and how HCC manages such Drums; and

      (4)    Whether HCC bulks Used 106 Solvent Drums into tanks.

iii.    If any Re-Use Solvent is being used by HCC as provided in Paragraph 52.c of the Consent Decree (i.e., the Re-Use Solvent is not sent to a Re-Use Solvent Customer) at the HCC Waste Screening Facility during the Site Visit, observe how such Re-Use solvent is being used.

iv.    HCC's procedures for sampling of each Consolidation Container of Re-Use Solvent and whether such procedures are consistent with the plan approved by Plaintiffs pursuant to Subsection VI.C.iii of the Consent Decree. The Auditor shall observe HCC sampling of at least one Consolidation Container of Re-Use Solvent.

v.    Records maintained by HCC associated with Consolidation Containers of Re-Use Solvent shipped to a Re-Use Solvent Customer, with a focus on whether the records document that the water content of the shipped Re-Use Solvent is less than 10% by volume, whether records of any specifications or acceptance criteria are maintained as required by Paragraph 53 of the Consent

Decree, and whether there are any available records of instances when a Re-Use Solvent Customer rejected a Consolidation Container of Re-Use Solvent. If a Consolidation Container of Re-Use Solvent was rejected by a Re-Use Solvent Customer, describe how HCC documents and manages such rejected Consolidation Container.

vi.     HCC's records associated with Consolidation Containers of Off-Spec Re-Use Solvent, with a focus on whether HCC meets the requirements of Paragraph 65 of the Consent Decree prior to sending Off-Spec Re-Use to an End User and how often HCC ships the Off-Spec Re-Use Solvent offsite as hazardous waste.

vii.     HCC's records associated with Used 106 Solvent and whether the record keeping system is adequate for demonstrating that the Re-Use Solvent is being stored for no longer than the time periods allowed under 40 C.F.R. § 261.1(c)(8).

e.     If any Consolidation Container of Off-Spec Re-Use Solvent was deemed hazardous waste, whether HCC manages such Of-Spec Re-Use Solvent in compliance with Paragraph 65.d. of the Consent Decree.

15.     With regard to any Re-Use Solvent that is not sent to Re-Use Solvent Customers but is instead used by HCC as provided in Paragraph 52.c of the Consent Decree, the Auditor shall identify and describe all uses for such Re-Use Solvent identified by HCC.

16.     With regard to the tracking systems for Used 106 Solvent and Used 142 Solvent, whether HCC is implementing such systems in compliance with the requirements of Paragraphs 29 and 61 of the Consent Decree.

17.    <u>Auditor Report</u>. HCC shall ensure that the Auditor prepares an Audit Report covering its Used 142 Solvent Program and Used 106 Solvent Program within 60 days of completing Site Visits to HCC's Waste Screening Facilities. The Audit Report shall contain:

  a. A summary of the Audit process, including any obstacles and other issues encountered;

  b. All analytical results for samples collected by the Auditor at each HCC Waste Screening Facility;

  c. Detailed findings ("Audit Findings") for each Site Visit to a HCC Waste Screening Facility, including the basis for each finding and each area of concern identified;

  d. Description of observations pursuant to Paragraph 16 of this Appendix;

  e. Identification of any areas of concern and recommendations for resolving such areas of concern; and

  f. Recommendations, if any, for improving the efficacy of HCC's Used 142 Solvent Program and Used 106 Solvent Program.

18.    The Auditor shall prepare a draft of the Audit Report ("Draft Audit Report") and provide the Draft Audit Report to HCC within five days of completion. HCC may review the Draft Audit Report and provide comments on factual accuracy. The Auditor may make revisions in response to HCC's comments. Within 30 days of providing the Draft Audit Report to HCC or such longer period of time as is agreed to in writing by the Parties, the Auditor shall prepare an initial Audit Report ("Initial Audit Report") and provide to the Parties the Initial Audit Report, the Draft Audit Report, any comments received from HCC on the Draft Audit Report, and any revisions of the audit report exchanged with HCC. The Parties shall have an opportunity to

review and comment on the Initial Audit Report within 30 days of receipt from the Auditor. If a Party provides comments, it shall do so in writing and shall provide copies to all other Parties. Within 60 days after the date the Auditor provided the Initial Audit Report to the Parties or such longer period of time as is agreed to in writing by the Parties, the Auditor shall finalize the report (Final Audit Report) and provide the Final Audit Report simultaneously to Plaintiffs and HCC.

19.     Within 60 days of receiving the Final Audit Report, HCC shall submit to Plaintiffs, in accordance with Section XV (Notices), a response to the Final Audit Report. HCC's response shall include:

     a.     A description of HCC's actions to address each Audit Finding, including schedules;

     b.     An explanation of any Audit Finding identified in the Final Audit Report with which HCC does not agree; and

     c.     For any actions recommended by the Auditor that HCC does not intend to implement, an explanation for why HCC will not or cannot implement the recommendation.

20.     Neither HCC nor Plaintiffs will be bound by any recommendations or conclusions of the Auditor.

**APPENDIX F**

**Third-party Audit at HCC Waste Screening Facilities**

*EXHIBIT A*

*Auditor Disclosure Statement*

_____ [INSERT NAME OF AUDITOR] makes the following

statements in connection with its proposed appointment as the Third-Party Auditor to conduct and

complete a review and audit to evaluate the efficacy of HCC's Used 142 Solvent Program and Used

106 Solvent Program of the consent decree entered in *United States, Louisiana Department of*

*Environmental Quality, and Indiana v. Heritage Crystal Clean, LLC*, Civil Action No. 1:22-cv-

00303 (N.D. Il.).

"Auditor" means _____ [INSERT NAME OF AUDITOR], and the
employees or contractors who would provide the oversight described above.

"The Defendant" means the Heritage Crystal Clean, LLC.

1.  Auditor's Qualifications. The resume(s) and other information provided by _____

    [INSERT NAME OF AUDITOR] to the Defendant accurately reflects the Auditor's

    professional experience.

2.  Financial interests.

    a.  _____ [INSERT NAME OF AUDITOR] has no financial interest in the

        Defendant or any of its subsidiaries or affiliates.

    b.  If, between the date of this statement and when _____ [INSERT NAME OF

        AUDITOR]'s term as the Third-Party Auditor expires, _____ [INSERT NAME

        OF AUDITOR]'s financial interests with respect to the Defendant change,

        _____ [INSERT NAME OF AUDITOR] agrees to notify the U.S. Department

        of Justice in writing as soon as reasonably possible after becoming aware of the

        change. _____ [INSERT NAME OF AUDITOR] is aware that acquiring a

financial interest in the Defendant could disqualify it from continuing the work described above.

3.      Employment, professional relationships, and affiliations.

a.      _____ [INSERT NAME OF AUDITOR] is not a party to any employment, consulting, agency, attorney- client, auditing or other professional relationship or affiliation with the Defendant, or any of its subsidiaries or affiliates.

b.      _____ [INSERT NAME OF AUDITOR] has not been a party to such a professional relationship or affiliation with the Defendant within the past one year.

c.      _____ [INSERT NAME OF AUDITOR] agrees not to engage in such a professional relationship or affiliation with the Defendant during its term as the Third-Party Auditor and for a period of at least one year following the Auditor's submission of its final Audit Report.

d.      After the date of this statement, to the extent that the services of additional personnel will be utilized in the discharge of the Third-Party Auditor's duties, prior to engaging any such personnel, _____ [INSERT NAME OF AUDITOR] agrees to review the backgrounds of all such personnel to determine whether said personnel or any other entity with which said personnel is affiliated, is or has been a party to any employment, consulting, agency, attorney-client, auditing or other professional relationship or affiliation with the Defendant or any of its subsidiaries or affiliates. To the extent any such relationship or affiliation exists, _____ [INSERT NAME OF AUDITOR] will notify the U.S. Department of Justice to seek a determination whether it is appropriate to engage said personnel to assist in the Third-Party Audit of the Defendant

_____       _____
Date                                    Signature

Name: _____

On behalf of AUDITOR: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, AND THE STATE OF INDIANA, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) | Civil Action No. 1:22-cv-00303 Honorable Jorge L. Alonso |
| v. | ) ) | Honorable Susan E. Cox |
| HERITAGE-CRYSTAL CLEAN, LLC, | ) ) |  |
| Defendant. | ) ) |  |

**CONSENT DECREE**

APPENDIX G

*Reporting Spreadsheets*

**NEW CUSTOMER PRE-ACCEPTANCE SAMPLING**

In each annual report required pursuant to Paragraph 77.b, HCC must provide information in table below with respect to each New 142 Solvent Customer from which samples were collected and/or analyzed pursuant to Paragraph 22 during the annual reporting period.

QUESTION #1: | How many prospective SQG/LQG customers did HCC sample during the previous year (annual reporting pursuant to Consent Decree Paragraph 77.b.ii)? | *(Enter total # here)*

| | SUMMARY TABLE | | | | | | | HW SHIPMENT INFO | SAMPLING RESULTS (For "F" samples in Column H, enter all analytical results that fail the thresholds in Columns K-P) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CC Generator Code (HCC Generator Identification #) | HCC Waste Screening Facility | EPA Generator ID | Generator Name | Date HCC Received Report With Results of Analysis of Generator's Used 142 Solvent | Lab Report Number | Sampled waste was non-hazardous (P) or hazardous (F) | If "F" in Column H, report whether drums were "rejected" or provide HW manifest # | Flash point <140°F | cadmium (≥1.0 mg/L) | chromium (≥5.0 mg/L) | lead (≥5.0 mg/L) | tetrachloroethylene (≥0.7 mg/L) | trichloroethylene (≥0.5 mg/L) | Any QA/QC flags, issues, etc.? (Y/N) |
| 1 | 424995 | Shreveport | LAD000000615 | 123 Store | 2.4.24 | 50346109 | F | JDD12345690 | 120 | | | | | | |
| 2 | 148584 | 10th Street | IND000554321 | S&S Cycle | 2.4.24 | 50346301 | P | | | | | | | | N |

If "F" in Column H, HCC must complete tab titled "HW Failed Acceptance" for that generator

**RANDOM DRUM SAMPLING**

In each quarterly report required pursuant to Paragraph 77.a, HCC must provide information in the summary table relating to each Used 142 Solvent Drum sampled pursuant to Paragraph 34-36 during the three month sampling period.

**TABLE 2**

| | | | | |
|---|---|---|---|---|
| **QUESTION #1:** | **How many total drums of Used 142 Solvent did each HCC Waste Screening Facility sample and analyze during the previous three month sampling period and how many drums failed for one or more hazardous constituent?** | | | |

| Waste Screening Facility: | Total Drums Sampled: | Total Drums Failed: | % Failed: | Was step up (>10%) or step down (<10%) triggered? Explain. |
|---|---|---|---|---|
| Shreveport (example) | 30 | 6 | 20.0% | Step up triggered. Hub will increase sampling to 12 drums per month for next period. |
| 10th Street (example) | 30 | 5 | 16.7% | Step up triggered. Hub will increase sampling to 12 drums per month for next period. |
| Atlanta (example) | 30 | 2 | 6.7% | Step down triggered. Hub will reduce sampling to 8 drums per month for next period. |
| Pennsauken (example) | 30 | 1 | 3.3% | Step down triggered. Hub will reduce sampling to 8 drums per month for next period. |
| Other/New | 0 | 0 | #DIV/0! | |

For each drum sampled during the reporting period, provide all information specified in Table 1 below. For each waste screening facility, provide all information specified in Table 2.

**TABLE 1: SUMMARY TABLE** | **HW SHIPMENT INFO** | **SAMPLING RESULTS** (For "F" samples in Column K, enter all analytical results that fail the thresholds in Columns N-X)

| | CC Generator Code (HCC Generator Identification #) | HCC Waste Screening Facility | EPA Generator ID | Generator Name | Generator Status | Date Sampled | LAB ID | Lab Report Number | Date HCC Received Report With Results of Analysis of Generator's Used 142 Solvent | Sampled waste was non-hazardous (P) or hazardous (F) | If "F" in Column K, provide HW shipment date & Manifest # | Flash point <140°F | cadmium (±1.0 mg/L) | chromium (±5.0 mg/L) | lead (±5.0 mg/L) | methyl ethyl ketone (±200 mg/L) | trichloroethylene (±0.5 mg/L) | tetrachloroethylene (±0.7 mg/L) | carbon tetrachloride (±0.5 mg/L) | chlorobenzene (±100 mg/L) | chloroform (±6.0 mg/L) | 1,2 dichloroethane (±0.5 mg/L) | Any QA/QC flags, issues, etc.? (Y/N) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 147600 | Shreveport | LAD000000615 | Honda | SQG | 6.22.23 | 23062043-003 | 50346111 | 6.30.23 | F | 7.3.23; JRR2345678 | 185 | | | | | | 0.6 | | | | | Y |
| 2 | 106876 | 10th Street | IN000554321 | Granite | CSQG | 6.22.23 | 23062043-001 | 50346312 | 6.30.23 | P | | | | | | | | | | | | | |

If "F" in Column K, HCC must complete tab titled "HW Failed Random" for that generator

**CONSOLIDATION CONTAINER SAMPLING**

In each quarterly report required pursuant to Paragraph 77.a, HCC must provide information in the summary table below relating to each Used 142 Solvent Consolidation Container sampled pursuant to Paragraph 43 - 45 during the three month sampling period.

| | | TABLE 2 | | | | | |
|---|---|---|---|---|---|---|---|
| **QUESTION #1:** | How many total Consolidation Containers (CC) of Used 142 Solvent did HCC sample during the previous three month sampling period and what is the cumulative total of all CC samples including samples from previous periods? | | | | | | |
| | Waste Screening Facility: | Cumulative Total CCs Sampled: | Cumulative Total CCs that Failed: | % Cumulative Failed: | Step up/down triggered? (Up or Down) | Date step up/down triggered? | |
| **For each CC sampled during the reporting period, provide all information specified in Table 1 below. If the cumulative total of all CC samples is ≥40, provide all information specified in Table 2.** | | Shreveport (example) | 20 | 1 | 5.0% | | | |
| | | 10th Street (example) | 16 | 1 | 6.3% | | | |
| | | Atlanta (example) | 12 | 0 | 0.0% | Up | 6/30/2023 | |
| | | Pennsauken (example) | 5 | 0 | 0.0% | | | |
| | | Other/New | 0 | 0 | #DIV/0! | | | |
| | | TOTAL: | 53 | 2 | 3.8% | | | |

| TABLE 1: SUMMARY TABLE | | | | | | | HW SHIPMENT INFO | SAMPLING RESULTS (all results for each constituent must be reported for every sampled consolidation container regardless of P/F result) | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Consolidation Container ID | HCC Waste Screening Facility | Date Sampled | Date HCC Received Report With Results of Analysis of Generator's Used 142 Solvent | Sampled waste was non-hazardous (P) or hazardous (F) | If "F" in Column E, enter total # of SQG & LQG customers contained in Consolidation Container not previously sampled | | If "F" in Column E, provide HW shipment date & Manifest # | Flash point <140°F | cadmium (≥1.0 mg/L) | chromium (≥5.0 mg/L) | lead (≥5.0 mg/L) | methyl ethyl ketone (≥200 mg/L) | trichloroeth ylene (≥0.5 mg/L) | tetrachloro ethylene (≥0.7 mg/L) | carbon tetrachlorid e (≥0.5 mg/L) | chlorobenz ene (≥100 mg/L) | chloroform (≥6.0 mg/L) | 1,2 dichloro ethane (≥0.5 mg/L) | Any QA/QC flags, issues, etc.? (Y/N) |
| 1 | (EXAMPLE) RC874 | Shreveport | 4/15/2024 | 4/25/2024 | F | 2 | | 4.30.23; JRR2345699 | 145F | 0.2 | ND | 4.5 | 105.0 | 0.6 | 0.4 | 0.1 | 75.0 | 1.2 | ND | Y |
| 2 | (EXAMPLE) RC999 | 10th Street | 5/16/2024 | 5/22/2024 | F | 0 | If "F" in Column F, HCC must complete tab titled "HW Failed Consolidation" for each generator referenced in Column G | 5.25.23; JDD2345678 | 130F | ND | 3.2 | 2.7 | 0.8 | 0.5 | 0.4 | 0.3 | 90.0 | 2.0 | 0.1 | N |
| 3 | RC 1234 | Atlanta | 6/6/2024 | 6/30/2024 | P | | | | 150F | 0.9 | 2.2 | 3.5 | 99 | 0.5 | 0.1 | 0.2 | 66 | 3 | 0.2 | N |

## SUPPLEMENTAL PRE-ACCEPTANCE SAMPLING

In each annual report required pursuant to Paragraph 77.b, HCC must provide information in the table below with respect to each New 142 Solvent Customer whose Used 142 Solvent failed pre-acceptance sampling pursuant to Paragraph 22 of the CD.

**QUESTION #1:** **Did HCC identify any Used 142 Solvent Drum samples during the annual reporting period from New 142 Solvent Customers that identify as a small quantity generator or large quantity generator that were hazardous?**

**(Yes/No)** *If yes, HCC must enter data below for each generator.* *Note: Once listed here, generators must be included on future quarterly reports until they are reaccepted into the 142 program or service is discontinued.*

### SUMMARY TABLE

| | CC Generator Code (HCC Generator Identification #) | EPA Generator ID | Generator Name | Re-Sampling/Acceptance Status | Additional Notes: Provide history of re-sampling results. Upon Plaintiffs' request, HCC shall provide the sampling and analysis reports (Consent Decree Paragraph 77.b.ii). |
|---|---|---|---|---|---|
| 1 | 424995 | ILD389762345 | 123 Store | Sample 1 taken | Sample 1 failed; Lab ID XXX; 05/05/24; Failed Cd-2.0 ppm |
| | 424995 | | 123 Store | Service Discontinued | |
| 2 | 277742 | CTR000987123 | LMN Body Shop | Sample 1 taken | Sample 1 passed - add lab ID and report date |
| | 277742 | | LMN Body Shop | Sample 2 taken | Sample 2 passed - add lab ID and report date |
| | 277742 | | LMN Body Shop | Customer accepted into program (after 2 consecutive non-haz samples) | |
| 3 | 335679 | TND008976543 | XYZ Mechanics | Service Discontinued | |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | | **142 SOLVENT CUSTOMER SAMPLING UNDER PARAGRAPH 40** | | | | |
| 2 | | In each quarterly report required pursuant to Paragraph 77.a, HCC shall provide the following information with respect to Used 142 Solvent Customer sampling required pursuant to Paragraph 41.b.iii of the CD. | | | | |
| 3 | | **QUESTION #1:** | **Did HCC identify any Used 142 Solvent Drum samples during the three month sampling period from Customers that were hazardous?** | | | |
| 4 | | | | | | |
| 5 | | **(Yes/No)** | *If yes, HCC must enter data below for each generator.* **Note: Once listed here, generators must be included on future quarterly reports until they are reaccepted into the 142 program or service is discontinued.** | | | |
| 6 | | | | | | |
| 7 | | **SUMMARY TABLE** | | | | |
| 8 | | **CC Generator Code (HCC Generator Identification #)** | **EPA Generator ID** | **Generator Name** | **Re-Sampling/Re-acceptance Status** | **Additional Notes: Provide history of re-sampling results.** Upon Plaintiffs' request, HCC shall provide the sampling and analysis reports (Consent Decree Paragraph 77.a.i). |
| 9 | | | | | | |
| 10 | 1 | 424995 | ILD389762345 | 123 Store | Sample 1 taken | Sample 1 failed; Lab ID XXX; 05/05/24; Failed Cd-2.0 ppm |
| 11 | | 424995 | | 123 Store | Service Discontinued | |
| 12 | | | | | | |
| 13 | 2 | 277742 | CTR000987123 | LMN Body Shop | Sample 1 taken | Sample 1 passed - add lab ID and report date |
| 14 | | 277742 | | LMN Body Shop | Sample 2 taken | Sample 2 passed - add lab ID and report date |
| 15 | | 277742 | | LMN Body Shop | Generator reaccepted into program (after 2 consecutive non-haz samples) | |
| 16 | | | | | | |
| 17 | 3 | 147600 | TND008976543 | Honda Indianapolis | Service Discontinued | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |

**142 SOLVENT CUSTOMER SAMPLING UNDER PARAGRAPHS 49.c and 50**

In each quarterly report required pursuant to Paragraph 77.a, HCC shall provide the information in the table below with respect all sampling performed in accordance with Paragraphs 50.c and 51 of the CD during the reporting period.

**QUESTION #1:** Was HCC required to sample any SQG/LQG Used 142 Solvent Customers not previously sampled due to a Used 142 Solvent Consolidation Container that was found to be hazardous?

**(Yes/No)** *If yes, HCC must enter data below for each generator.* *Note: Once listed here, generators must be included on future quarterly reports until they are reaccepted into the 142 program or service is discontinued.*

## SUMMARY TABLE

| Consolidation Container ID | CC Generator Code (HCC Generator Identification #) | EPA Generator ID | Generator Name | Re-Sampling/Re-acceptance Status | Additional Notes: Provide history of re-sampling results. Upon Plaintiffs' request, HCC shall provide the sampling and analysis reports (Consent Decree Paragraph 77.a.ix). |
|---|---|---|---|---|---|
| 1 RC874 | 32145 | ILD389762345 | XWZ Paint Shop | Customer sample 1 taken | Sample 1 failed; Lab ID XXX; 05/05/24; Failed Cd-2.0 ppm |
| RC874 | 32146 | | XWZ Paint Shop | Customer sample 2 taken | Sample 2 passed - add lab ID and report date |
| | | | | Customer sample 3 taken | Sample 3 passed - add lab ID and report date |
| | | | | Customer re-accepted into 142 program | |
| 2 RC899 | 54321 | CTR000987123 | ABC Mfg | Customer sample 1 taken | Sample 1 passed - add lab ID and report date |
| | | | | Customer re-accepted into 142 program | |

| | A | B | C | D |
|---|---|---|---|---|
| 1 | | **Re-Use Customer List** | | |
| 2 | | Pursuant to Paragraph 53, HCC shall develop and maintain a list of all End Users of Re-Use Solvent and any specifiication or acceptance criteria relating to the composition of Re-Use Solvent. (To be provided to Plaintiffs upon request) | | |
| 3 | | | | |
| 4 | | **SUMMARY TABLE** | | |
| 5 | | Re-Use Solvent Customer Name | Address | Any Specifications or Acceptance Criteria |
| 6 | | | | |
| 7 | 1 | | | |
| 8 | 2 | | | |
| 9 | 3 | | | |
| 10 | 4 | | | |
| 11 | 5 | | | |
| 12 | 6 | | | |
| 13 | 7 | | | |
| 14 | 8 | | | |
| 15 | 9 | | | |
| 16 | 10 | | | |
| 17 | 11 | | | |
| 18 | 12 | | | |
| 19 | 13 | | | |
| 20 | 14 | | | |
| 21 | 15 | | | |
| 22 | 16 | | | |
| 23 | 17 | | | |
| 24 | 18 | | | |
| 25 | 19 | | | |
| 26 | 20 | | | |

| | A | B | C | D |
|---|---|---|---|---|
| 1 | | **Off-Spec Customer List** | | |
| 2 | | Pursuant to Paragraph 54, HCC shall submit to Plaintiffs a list of End Users who are able to directly use or reuse Used 106 Solvent that contains more than 10% water by volume (referred to as "Off-Spec Re-Use Solvent") without the need to reclaim such solvent. (To be provided to Plaintiffs within 30 days of Effective Date of the CD) | | |
| 3 | | | | |
| 4 | | **SUMMARY TABLE** | | |
| 5 | | Off-Spec Re-Use Solvent Customer Name | Address | Any Specifications or Acceptance Criteria |
| 6 | | | | |
| 7 | 1 | | | |
| 8 | 2 | | | |
| 9 | 3 | | | |
| 10 | 4 | | | |
| 11 | 5 | | | |
| 12 | 6 | | | |
| 13 | 7 | | | |
| 14 | 8 | | | |
| 15 | 9 | | | |
| 16 | 10 | | | |
| 17 | 11 | | | |
| 18 | 12 | | | |
| 19 | 13 | | | |
| 20 | 14 | | | |
| 21 | 15 | | | |
| 22 | 16 | | | |
| 23 | 17 | | | |
| 24 | 18 | | | |
| 25 | 19 | | | |
| 26 | 20 | | | |

**Consolidation Containers of ReUse Solvent**

Pursuant to Paragraph 61 and the reporting section of the CD, HCC must provide tracking information for each consolidation container of Used 106 Solvent that contains more than 10 percent water by volume (i.e., Off-Spec Re-use Solvent). When HCC reuses Used 106 Solvent (i.e., cleaning), such use shall be legitimate per Paragraph 52.c of the Consent Decree (see EPA RCRA Online document #14281 for further guidance).

| | SUMMARY TABLE | | | | OFF-SPEC RE-USE CUSTOMER (>10% Water) | | | | | HCC RE-USE AT AN HCC FACILITY | | | SHIPPED TO TSDF | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consolidation Container ID | HCC Waste Screening Facility | Date Sampled | Screening Result (> 10% OR < 10% Water) | Name of End User of Off-Spec Re-Use Solvent | Date End User Identified (CD req. w/in 45 days) | Date Off-Spec Re-Use Solvent sent to End User | Volume Shipped | Storage Prior to Reuse | Volume Reused | Type of Reuse | If used for cleaning, provide # of units cleaned | Disposal After Reuse | Date Used 106 Solvent was shipped to TSDF: | HW Manifest # for shipment to TSDF: | Reason Shipped to TSDF |
| 1 (EXAMPLE) RC999 | Indianapolis | 4/24/2024 | >10% | AAA Paint Company | 4/25/2024 | 4/30/2024 | 5000 gallons | NA | NA | NA | NA | NA | NA | NA | NA |
| 2 (EXAMPLE) RC1000 | Shreveport | 5/11/2024 | >10% | NA | NA | NA | NA | NA | NA | NA | NA | NA | 4/28/2024 | JDD05187426645 | No End User Available to Accept |
| 3 (EXAMPLE) RC1001 | Atlanta | 6/3/2024 | >10% | NA | NA | NA | NA | Totes | 100 gallons | Tank Cleaning and Line Flushing | NA | HW Disposal | 6/15/2024 | JDD05187448966 | NA |
| 4 (EXAMPLE) RC1002 | Shreveport | 7/16/2024 | <10% | NA | NA | NA | NA | NA | NA | NA | NA | NA | NA | NA | NA |
| 5 | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | |

**Rejected 106 Solvent Drums**

Pursuant to Paragraph 77 of the reporting section of the CD, for each Used 106 Solvent drum rejected, HCC shall provide information tracked pursuant Paragraph 61.a.ii, name and address of the Customer, and actions taken by HCC.

| | SUMMARY TABLE | | | | | | ACTIONS TAKEN | | HAZARDOUS WASTE | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Drum ID | HCC Facility | Customer Name | HCC Generator ID | Date Accepted by HCC | Date Rejected | Reason for Rejection | Drum Final Destination | If HW, enter date Used 106 Solvent was shipped to TSDF: | If HW, enter HW Manifest # for shipment to TSDF: |
| 1 | (EXAMPLE) DM89564 | Shreveport | YXZ Mechanics | HCC55320 | 3/31/2024 | 4/1/2024 | Strange Color/Odor | Returned to Customer | NA | NA |
| 2 | (EXAMPLE) DM99568 | Atlanta | ABC Paint Shop | HCC45690 | 4/14/2024 | 4/15/2024 | Contained Debris | Disposal as Haz Waste | 4/28/2024 | JDD05187426645 |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |
| 10 | | | | | | | | | | |